UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JANE DOE,

                Plaintiff,                           **MEMORANDUM AND ORDER**
                                                                         22-CV-07773 (OEM) (RML)

      -against-

NEW YORK CITY DEPARTMENT OF
EDUCATION, CITY OF NEW YORK, DAVID C.
BANKS, and ALEX TRIPODI,

                Defendants.
-----------------------------------------------------------------x

**ORELIA E. MERCHANT, United States District Judge:**

        On December 12, 2022, pseudonymous plaintiff Jane Doe ("Plaintiff") brought suit against the New York City Department of Education (the "NYC DOE"), the City of New York (the "City"), David C. Banks ("Banks," together with the NYC DOE and the City the "City Defendants"), and Alex Tripodi ("Tripodi," together with the City Defendants "Defendants"), bringing claims for violation of N.Y.C. Admin. Code §10-1104 (the "Gender Motivated Violence Act" or "GMVA"), battery, assault, threat to disseminate an intimate image, intentional infliction of emotional distress, and claims pursuant to Title IX, 18 U.S.C. § 2252 ("Title IX") and 42 U.S.C. § 1983 ("§ 1983"). *See generally* Plaintiff's Complaint ("Compl."), ECF 1. Before the Court are Tripodi's motion to dismiss and motion to strike, filed on October 2, 2023, and the City Defendants' motion to dismiss, filed on December 7, 2023. For the reasons that follow, the City Defendants' motion to dismiss is granted as to Plaintiff's § 1983 claims and denied as to Plaintiff's remaining claims, and Tripodi's motions are hereby denied.

1

# BACKGROUND

Plaintiff alleges that Tripodi, her classmate at Brooklyn Tech High School, coerced her into sharing "naked images and videos," then used the threat of sharing those photos to continue to abuse and control Plaintiff for several months, all while Plaintiff was still a minor. Compl. ¶ 10. Plaintiff alleges that among other abuses, Tripodi used the threat of public humiliation to coerce Plaintiff into taking and sending him hundreds of further naked images and videos against her will. Plaintiff also alleges two incidents of physical abuse: one where Tripodi "pushed [Plaintiff] forcefully against the front door of the building where she lives," and one where Tripodi "cornered JANE DOE in the staircase of her apartment and put his hand against her throat," causing her "extreme fear." Compl. ¶ 38. Plaintiff alleges that this abuse took place during 2020 and 2021, while Brooklyn Tech was teaching remotely.

Plaintiff alleges that in September 2021, upon Brooklyn Tech's return to in-person learning, she informed high school administrators that this abuse had taken place, "with the goal of seeking her school's help to keep her safe from encountering her abuser at school." Compl. ¶ 11. Plaintiff alleges that the school responded by moving her out of classes with Tripodi and offering to transfer her out of Brooklyn Tech. The school allegedly took no further action to keep Tripodi away from Plaintiff. Plaintiff alleges that she encountered Tripodi on campus and had severe anxiety caused by the constant threat of seeing him in the halls at school. Plaintiff also alleges that after her complaint against Tripoldi became known within the school community, the Brooklyn Tech administration accused her of encouraging classmates to harass Tripodi.

Plaintiff brings a variety of claims against Tripodi and brings § 1983 and Title IX claims against the City Defendants.

The City Defendants move pursuant to Rule 12(b)(6) to dismiss Plaintiff's claims in their entirety. Plaintiff opposes the City Defendants' motion to dismiss, alleging that the City Defendants violated Plaintiff's rights under § 1983 and Title IX (deliberate indifference and hostile environment) when the City Defendants failed to promptly investigate and appropriately respond to sexual harassment beginning during the period of remote learning during the pandemic and continuing through the return to in-person classes.

Alex Tripodi moves to dismiss Plaintiff's Gender Motivated Violence Act claim and moves to strike references to "sexual violence" from the complaint.

## DISCUSSION

### I. City Defendants' Motion to Dismiss

#### A. Harassing Conduct Under Title IX

The City Defendants contend that since Tripodi's offensive behaviors towards Plaintiff happened exclusively during the period of remote learning and had ceased before the return of in-person learning, the City Defendants lacked "substantial control" over Tripodi or the context in which the harassment occurred, rendering Title IX inapplicable. The City Defendants contends that "[b]ecause [the NYC] DOE did not exercise substantial control over both Tripodi and the circumstances in which he allegedly sexually harassed Plaintiff, the Court cannot infer that [the NYC] DOE's response to the harassment is governed by Title IX." City Defendants' Memorandum of Law in Support of Motion to Dismiss ("NYC MTD MOL"), ECF 31 at 8. Furthermore, the City Defendants claim that their response was not "deliberately indifferent" nor "clearly unreasonable," such that any delay in initiating an investigation was "relatively short." *Id.* at 9. Finally, the City Defendants contends that the allegedly hostile educational environment

3

Plaintiff experienced when Plaintiff's friends were disciplined in the backlash against Tripodi does not constitute discrimination against Plaintiff on the basis of her sex. *Id*. at 11.

In opposition, Plaintiff clarifies that her Title IX claim only covers the period of time after Plaintiff reported Tripodi's abuse to her guidance counselor—not the period of time during remote classes when the school was unaware of Tripodi's conduct. Plaintiff's Opposition to the City Defendants' DOE's MTD ("NYC Opp."), ECF 33 at 4. Additionally, Plaintiff claims that remote learning during the pandemic "muddied" the concept of what is on or off campus, making even remote, digital harassment an effectively "on campus" action. *Id*. at 3. Plaintiff alleges that she was deprived of educational opportunity and caused to endure a hostile educational environment when she was forced to attend school with her abuser and when the City Defendants "failed to enact any meaningful disciplinary measures" against Tripodi. *Id*. at 7.

As an initial matter, the Court finds that the NYC DOE had substantial control over Tripodi during the time period challenged by Plaintiff: the period of time after Plaintiff first made reports of abuse and after students had already returned to campus. The Court finds that Plaintiff may pursue Title IX claims against the City Defendants for this time period, finding persuasive the District of Connecticut's holding in *Doe ex rel. Doe v. Coventry Bd. of Educ.* 630 F. Supp. 2d 226, 232 (D. Conn. 2009) ("In this case, the Defendant is not liable for the sexual assault of Mary Doe because it did not occur on the high school grounds, and because the Defendant was not informed of the assault until after it occurred. The Defendant could, however, be liable for post-assault harassment.").

In order to establish a claim based on student-on-student harassment for this time period under Title IX, Plaintiff must demonstrate that: (1) the alleged harassment was so "severe, pervasive, and objectively offensive" that it deprived the plaintiff of "access to the educational

4

opportunities or benefits provided by the school"; (2) the funding recipient had "actual knowledge" of the sexual harassment; and (3) the funding recipient was "deliberately indifferent" to the harassment. *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 645-650 (1999).

*(1) Severe and pervasive*

In this case, the harassment challenged by Plaintiff is not the underlying abuse by Tripodi, but the inherent harassing effect of his presence on campus. The Court finds Plaintiff has adequately alleged that the risk of encountering her abuser on campus was sufficiently harassing to meet the *Davis* test's severe and pervasive harassment requirement.

"For a court to find that harassment denied a student access to educational resources and opportunities, the 'harassment must have [had] a concrete negative effect on the victim's education, which may include dropping grades, becoming homebound or hospitalized due to harassment, physical violence, or physical exclusion from a school resource.'" *Carabello v. New York City Dep't of Educ.*, 928 F. Supp. 2d 627, 643 (E.D.N.Y. 2013) (internal citations omitted). Plaintiff has adequately alleged such a concrete negative effect: "At times, JANE DOE would feel so distressed that she would hide in the bathroom and cry, unable to attend class. Other times, she would hide her tears but sit in class completely dissociated and unable to complete academic tasks. JANE DOE actively avoided areas of campus where TRIPODI might be." Compl. ¶ 69.

The Court finds instructive the holdings of other courts in this district that have found the "severe and pervasive" element of the *Davis* test met under similar circumstances. *See Kelly v. Yale Univ.*, No. CIV.A. 3:01-CV-1591, 2003 WL 1563424, at *3 (D. Conn. Mar. 26, 2003) ("The court agrees that a reasonable jury could conclude that further encounters, of any sort, between a rape victim and her attacker could create an environment sufficiently hostile to deprive the victim of access to educational opportunities provided by a university. Kelly has therefore raised an issue

of material fact with respect to the first element of the *Davis* test."); *Doe ex rel. Doe v. Coventry Bd. of Educ.*, 630 F. Supp. 2d 226, 233 (D. Conn. 2009) ("The mere fact that Mary Doe and Jesse attended school together could be found to constitute pervasive, severe, and objectively offensive harassment so as to deny Mary Doe equal access to school resources and opportunities. The evidence shows that Jesse was permitted to continue attending school with Mary Doe for three years after the assault, leaving constant potential for interactions between the two. Although the Defendant argues otherwise, a reasonable jury could conclude that Jesse's mere presence at the high school 'was harassing because it exposed [Mary Doe] to the possibility of an encounter with him.'"); *C.f. Carabello v. New York City Dep't of Educ.*, 928 F. Supp. 2d 627, 644 (E.D.N.Y. 2013) ("With B.P. permanently removed from New Utrecht, M.H.'s fear of future abuse alone could not have provided a sufficiently hostile environment to deprive her of access to educational opportunities. *Contra Kelly*, 2003 WL 1563424, at *3 (holding rapist's continued presence on campus exposed victim to future encounters, which 'of any sort ... could create an environment sufficiently hostile to deprive victim access to opportunities of university').").  Accordingly, the Court finds that Plaintiff has adequately pled the "severe and pervasive" element of the *Davis* test.

*(2) Actual Knowledge*

Plaintiff adequately alleges that the City Defendants had actual knowledge of Plaintiff's allegations during the relevant time period: she alleges that she "reported TRIPODI's abuse and sexual violence to the Brooklyn Tech guidance counselor" in September 2021. Compl. at 3. The City Defendants do not put forward any arguments against a finding of actual knowledge. *See generally* NYC MTD MOL.

6

*(3) Deliberate Indifference*

"The Supreme Court has held that Title IX's requirement of an 'adequate response' is violated […] if the response that is rendered 'amount[s] to deliberate indifference to discrimination.'" *Hayut v. State Univ. of New York*, 352 F.3d 733, 751 (2d Cir. 2003) (cleaned up). "Deliberate indifference may be found both when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances, […] and when remedial action only follows after a lengthy and unjustified delay." *Id*. (cleaned up).

"'Clearly unreasonable' is not a 'mere' reasonableness standard." *Soriano ex rel. Garcia v. Bd. of Educ. of City of New York*, No. 01 CV 4961(JG), 2004 WL 2397610, at *4 (E.D.N.Y. Oct. 27, 2004) (quoting *Davis*, 526 U.S. at 648). "In other words, for a court to find that a school acted with deliberate indifference, the measures taken must be so inadequate that a degree of discriminatory intent may be inferred." *Doe v. Trustees of Columbia Univ. in City of New York*, No. 21-CV-5839 (ER), 2023 WL 4211031, at *7 (S.D.N.Y. June 27, 2023). In general, "courts should refrain from second-guessing the disciplinary decisions made by school administrators." *Davis*, 526 U.S. at 648.

Here, Plaintiff has adequately alleged that the City Defendants' response to Plaintiff's reports of abuse was deliberately indifferent. After Plaintiff reported her abuse, Plaintiff's guidance counselor promptly changed her schedule to move her out of a statistics class shared with Tripodi, but it took the school approximately four weeks and a follow-up by Plaintiff to spur any further action. At that point, the school began an investigation and approximately one month later Brooklyn Tech offered Plaintiff an apology letter written by Tripodi and stated that he had deleted all sexual photos of Plaintiff from his phone (while supervised by Brooklyn Tech's dean).

7

Brooklyn Tech made no endeavor to keep Plaintiff and Tripodi separated on campus, either in classes or in other events, that did not involve putting the onus on Plaintiff: her guidance counselor changed her class schedule and "offered to write JANE DOE notes to excuse her from class when she felt too emotionally distressed to attend," but never made Tripodi change his schedule in any regard.  Compl. at 16.  The City Defendants' decision to permit Plaintiff to make changes to her own behavior so as to avoid future direct harassment does not immunize the City Defendants.  *See Kelly*, 2003 WL 1563424, at *4 ("Although Kelly was not subjected to further harassment by Nolan, it was her departure from her classes and her dormitory, not any immediate action taken by Yale, that assured that outcome. Therefore, a reasonable jury could find that Yale's response, or lack thereof, rendered Kelly 'liable or vulnerable' to Nolan's harassment, […] and that Yale's failure to provide Kelly with accommodations, either academic or residential, immediately following Nolan's assault of her, was clearly unreasonable given all the circumstances of which it was aware.").  In alleging that the City Defendants put the onus on Plaintiff to change classes, and did not take any action to move Tripodi, Plaintiff has adequately alleged that the City Defendants' response to Plaintiff's allegations was clearly unreasonable.  *See Coventry*, 630 F. Supp. 2d at 236. ("Similarly, a jury could find it unreasonable that the school did not take action by ensuring Jesse was in different classes than Mary Doe.  Given the totality of the high school experience, should the jury find that the class situation was reasonably managed, it could still find the Defendant's lack of discipline with regard to other school activities to constitute deliberate indifference.").

Accordingly, because Plaintiff has adequately pled a Title IX claim, the City Defendants' motion to dismiss Plaintiff's Title IX claims is denied.

8

### B.  § 1983 Claims

The City Defendants argue that Plaintiff has failed to identify a procedural due process right that Plaintiff was denied.  The City Defendants argue that Plaintiff's complaint to the school was handled adequately: it was "investigated without unreasonable delay" and "was substantiated."  NYC MTD MOL at 12.  The City Defendants argue that the due process clause does not impose an obligation to create policies protecting students from each other, that Plaintiff's Title IX claim subsumed her Equal Protection claim, and that Plaintiff failed to allege municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978).  Specifically, regarding *Monell*, the City Defendants argue that (1) Plaintiff's core allegation is that employees did not create new policies or enforce existing ones that would have led to Tripodi's removal, which is "the antithesis of a *Monell* claim," *Overhoff v. Ginsburg Dev., LLC*, 143 F. Supp. 2d 379, 389 (S.D.N.Y. 2001); (2) that Plaintiff has not plead that there was sufficiently widespread conduct such that can give rise to a *Monell* deliberate indifference claim; and (3) that the alleged victim transfer policy does not exist and "was not even exercised upon Plaintiff," because "she was offered a voluntary transfer."  MOL at 15.

Plaintiff retorts that she is challenging a specific, widespread policy: the unwritten victim transfer policy that she alleges required her to either move to a different school or stay in the same learning environment as her abuser.  Plaintiff also takes issue with the City Defendants' argument that Title IX subsumes § 1983 claims, noting that Title IX was not meant to be an exclusive mechanism for addressing gender discrimination in education.  Finally, Plaintiff argues that she has adequately alleged widespread conduct because she incorporated by reference other lawsuits against the NYC DOE making identical allegations of a victim transfer policy.

9

As an initial matter, Plaintiff's Title IX claim does not subsume her § 1983 claim. "Title IX contains no express private remedy, much less a more restrictive one. Th[e Supreme] Court has never held that an implied right of action had the effect of precluding suit under § 1983, likely because of the difficulty of discerning congressional intent in such a situation. Mindful that we should 'not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for a substantial equal protection claim,' we see no basis for doing so here." *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 256 (2009). Moreover, Plaintiff's § 1983 claim is sufficiently factually distinct: it targets a purported "victim transfer policy" while her Title IX claim targets on-campus harassment.

Though her § 1983 claim is not subsumed by her Title IX claim, Plaintiff's § 1983 claim nevertheless fails because she has adequately alleged municipal liability under *Monell*.

Plaintiff's § 1983 claim specifically challenges a purported "victim transfer policy" that requires school administrators to respond to instances of sexual assault by merely offering the victim a school transfer. "[B]oilerplate assertions of municipal policy are insufficient to state a claim for *Monell* liability." *Bishop v. City of New York*, No. 13-CV-9203 (AJN), 2016 WL 4484245, at *4 (S.D.N.Y. Aug. 18, 2016). "[A] plaintiff must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *Santos v. New York City*, 847 F. Supp. 2d 573, 576 (S.D.N.Y. 2012).

Plaintiff contends that she has met her burden under *Monell* by alleging an "unconstitutional practice of a subordinate employee [...] so manifest as to imply the constructive acquiescence of senior policy-making officials." NYC Opp. at 9 (quoting *Perkins v. City of Rochester*, 641 F. Supp. 2d 168, 172 (W.D.N.Y. 2009)). But Plaintiff's sole evidence for the

alleged victim transfer policy is (1) that she alleges the Brooklyn Tech dean described it to her as a policy; and (2) that other lawsuits were filed making similar allegations.

Plaintiff's allegation concerning the statement purportedly made by Brooklyn Tech's dean is not sufficient to allege *Monell* liability. Plaintiff alleges that "Dean Clarke stated that there was nothing Brooklyn Tech school leaders could do to protect JANE DOE, and that the only option for keeping her safe, per NYC DOE policy, was for JANE DOE to transfer to a different school (described throughout as 'the Victim Transfer Policy')." Compl. ¶ 73. This passing reference to "NYC DOE policy" is not clear and particularized enough on its own to adequately plead the existence of an unwritten "victim transfer policy."

Plaintiff's allegations concerning other lawsuits fare no better. "The Second Circuit and the district courts within the Second Circuit have held that a plaintiff's citation to a few lawsuits involving claims of alleged [constitutional violations] is not probative of the existence of an underlying policy by a municipality […] [T]he existence of other lawsuits against the City alleging similar violations of constitutional rights also does not establish a policy or custom as necessary under *Monell*." *Harris v. City of Newburgh*, No. 16-CV-2731 (KMK), 2017 WL 4334141, at *5 (S.D.N.Y. Sept. 27, 2017) (cleaned up). Again, like her allegations regarding the dean's statement, Plaintiffs allegations concerning other lawsuits are insufficiently specific and substantial to adequately plead a municipal policy. *See* Compl. ¶ 4 ("Since 2016, the NYCDOE was the subject of multiple lawsuits and federal investigations into discrimination and retaliation against girls who reported sexual violence by another classmate during school. Yet the NYCDOE has created no new safeguards to protect child victims of student-on-student sexual violence.").

Accordingly, Plaintiff's § 1983 claim is dismissed for a failure to adequately plead *Monell* liability.

## II. Tripodi's Motion to Dismiss

In his motion to dismiss, Tripodi seeks dismissal of Plaintiff's claim pursuant to the Gender Motivated Violence Act, which states that "any person claiming to be injured by an individual who commits a crime of violence motivated by gender as defined in section 8-903 of this chapter, shall have a cause of action against such individual." N.Y.C. Admin. Code § 8-22 904. "A plaintiff is required to establish the following elements in support of [a GMVA] claim: (1) the alleged act constitutes a misdemeanor or felony against the plaintiff; (2) presenting a serious risk of physical injury; (3) that was perpetrated because of plaintiff's gender; (4) in part because of animus against plaintiff's gender; and (4) resulted in injury." *Hughes v. Twenty-First Century Fox, Inc.*, 304 F. Supp. 3d 429, 455 (S.D.N.Y. 2018).

### A. Crime of Violence

A "crime of violence" means "an act or series of acts that would constitute a misdemeanor or felony" that "presents a serious risk of physical injury to another." N.Y.C. Admin. Code § 8-903. Tripodi argues that: (1) Plaintiff has not adequately alleged a misdemeanor or felony; and (2) Plaintiff has not alleged an act that presents a serious risk of physical injury.

(1) *Misdemeanor or Felony*

Tripodi argues that "[a] generous reading of the complaint suggests only three alleged acts that could be construed as possible crimes against the Defendant; namely, (1) the placing of the hand on Defendant's throat, (2) pushing her, and (3) soliciting sexually explicit content from her." Tripodi argues that Plaintiff did not allege she "sustain[ed] an actual injury" from these acts, and therefore has not alleged "[e]ven the lowest level assault in the state of New York." Tripodi's Memorandum of Law in Support of Motion to Dismiss ("Tripodi MOL"), ECF 25 at 4.

12

Plaintiff contends that even assuming, *arguendo*, that she has not alleged assault, she has alleged a litany of other misdemeanors and felonies including coercion, harassment, menacing, criminal obstruction of breathing, and sexual exploitation of minors. Memorandum of Law in Opposition to Tripodi's Motion to Dismiss ("Tripodi Opp."), ECF 32 at 4-5.

The Court agrees with Plaintiff that she has adequately alleged a misdemeanor or felony committed by Tripodi. Plaintiff alleged that Tripodi used physical force against her—choking her and "forcefully" pushing her into a door—as part of an effort to strike fear into Plaintiff, "relish[ing] in causing extreme fear" to her. Compl. at 8. At a very minimum, Plaintiff has alleged harassment in the second degree, in that Tripodi "str[uck], shove[d], kick[ed] or otherwise subject[ed] [Plaintiff] to physical contact" "with intent to harass, annoy or alarm" her. N.Y. Penal Law § 240.26.

(2) *Serious Risk of Physical Injury*

Tripodi argues that "[t]o be sure, a shove can pose a serious risk of injury if a complaint alleged additional facts not present in the instant complaint. Here, there is no allegation that this shove posed a serious risk of physical injury. Similarly, placing a hand at someone's throat can be menacing. The same act might also be arousing, depending on the participants' understanding." Tripodi MOL at 5. Tripodi also argues that Plaintiff has not "rule[d] out the possibility that the Defendant's acts were performed with Plaintiff's consent." *Id*.

Plaintiff responds that her complaint clearly alleges a serious risk of injury: she alleged that Tripodi was much larger than Plaintiff and "pushed [Plaintiff] forcefully against the front door of the building where she lives." Compl ¶ 38. She also alleged that "[o]n another occasion, [Tripodi] cornered [Plaintiff] in the staircase of her apartment and put his hand against her throat, causing

13

her "extreme fear." *Id*. Plaintiff contends that these acts carry an inherent and obvious risk of physical injury.

The Court finds that Plaintiff has adequately alleged a serious risk of physical injury. In allegedly "forcefully" pushing a much smaller person into a door and in putting his hands on her throat, Tripodi's acts "present[ed] a serious risk of physical injury to another." N.Y.C. Admin. Code § 8-903. Tripodi's contentions that Plaintiff may have found these acts "arousing" and has not "rule[d] out the possibility that the Defendant's acts were performed with Plaintiff's consent" are entirely unmoored from the allegations in this case and the standard at the motion to dismiss stage. Tripodi MOL at 5. It is not Plaintiff's burden at the pleading stage to "rule out" all possible factual scenarios, and Plaintiff clearly did not allege that these acts, which she described as "causing extreme fear," were either arousing or consented to. Compl. at 8.

### B. Motivated by Gender

"The Code specifies that a 'crime of violence motivated by gender' is 'a crime of violence committed because of gender or on the basis of gender, and due, at least in part, to an animus based on the victim's gender.'" *Garcia v. Comprehensive Ctr., LLC*, No. 17-CV-8970 (JPO), 2018 WL 3918180, at *5 (S.D.N.Y. Aug. 16, 2018) (quoting N.Y.C. Admin. Code § 8-903(b)). Tripodi alleges that Plaintiff has failed to plead animus based on gender.

Tripodi notes that there are a number of "cases involving truly abhorrent domestic violence" that courts have dismissed "when the animus is clearly directed only against the plaintiff, not against all members of plaintiff's gender." Tripodi MOL at 6. Tripodi argues that because the complaint makes no specific allegations regarding his attitudes toward women in general—only allegations of his abuse toward Plaintiff—Plaintiff has failed to plead animus. *Id*.

14

Plaintiff argues that the correct reading of the GMVA is a more permissive one, with a less strict focus on specific allegations of gender-wide animus. First, Plaintiff points to the legislative history of the GMVA, which made repeated emphasis of the law's goal in combating domestic violence. Because Plaintiff is a victim of domestic violence, Plaintiff argues she should be considered to fall within the GMVA's ambit. Second, Plaintiff argues that Tripodi's gender animus cases are distinguishable and almost all predate Plaintiff's cited cases, which have a broader interpretation of the animus requirement wherein "[a]nimus inheres where consent is absent." *Breest v. Haggis*, 180 A.D.3d 83, 94 (N.Y. App. Div. 1st Dep't 2019). Plaintiff argues that she has adequately alleged animus through the sexual exploitation and physical abuse alleged in her complaint.

Here, on the specific allegations in Plaintiff's complaint, the Court finds that Plaintiff has adequately alleged gender-based animus. Plaintiff does not just allege outrageous acts against a victim who happens to be female: she alleges that Tripodi engaged in a complex and extensive pattern of sexual coercion to keep Plaintiff "obedient" and subservient to him, accompanied by the use of misogynistic language like "whore," "slut," and "bitch." Compl. at 10. Considering the allegations of Plaintiff's complaint as a whole, the Court finds Plaintiff's cited precedent more applicable to the facts of this case and finds that Plaintiff has adequately alleged gender-based animus. *See Breest* 180 A.D.3d 83 at 94 ("Without consent, sexual acts such as those alleged in the complaint are a violation of the victim's bodily autonomy and an expression of the perpetrator's contempt for that autonomy. Coerced sexual activity is dehumanizing and fear-inducing. Malice or ill will based on gender is apparent from the alleged commission of the act itself. Animus inheres where consent is absent."); *Engleman v. Rofe*, 194 A.D.3d 26 (N.Y. App. Div. 2021) (same).

### C. Striking "Sexual Violence"

Lastly, Tripodi argues that Plaintiff's references to "sexual violence" should be stricken as "scandalous and prejudicial." Tripodi MOL at 8. Tripodi alleges that neither of the two alleged instances of physical abuse were "either sexual or violent in nature." *Id*. In response, Plaintiff contends that her complaint alleges that Tripodi forced her to make child sexual abuse material, threatened her with the publication of that material, and was sexually gratified by violently choking her.

"Motions to strike are not generally favored, except in relation to scandalous matters. Because striking a portion of a pleading is often sought by the movant as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor." *Wine Markets Int'l, Inc. v. Bass*, 177 F.R.D. 128, 133 (E.D.N.Y. 1998). "Scandalous generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *United States ex rel. Raffington v. Bon Secours Health Sys., Inc.*, 285 F. Supp. 3d 759, 773 (S.D.N.Y. 2018).

Here, the purportedly scandalous nature of Plaintiff's language derives from the fundamentally scandalous nature of Tripodi's alleged actions. Plaintiff, *inter alia*, alleges that Tripodi was gratified by choking Plaintiff as part of a scheme to coerce her into the production of child sex abuse material. To label these acts as "sexual violence" is an acceptable description of Plaintiff's allegations and does not "unnecessarily reflect on [Tripodi's] moral character" nor "detract[] from the dignity of the court." *Raffington*, 285 F. Supp. 3d at 773. Accordingly, Tripodi's motion to strike is denied.

## CONCLUSION

For the reasons set forth above, the City Defendants' motion to dismiss is granted as to Plaintiff's § 1983 claims and denied as to Plaintiff's remaining claims. Tripodi's motion to dismiss and motion to strike are denied.

SO ORDERED.

    /s/
ORELIA E. MERCHANT
United States District Judge

Dated: Brooklyn, New York
July 26, 2024