## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| JANE DOE,<br><br>      Plaintiff,<br><br> -against-<br><br>ALEX TRIPODI, CITY OF NEW YORK, NEW YORK DEPARTMENT OF EDUCATION, and CHANCELLOR DAVID C. BANKS in his official capacity,<br><br>      Defendants. | Case No.: 1:22-cv-07773 (OEM-RML)<br><br><br>**AMENDED COMPLAINT FOR DAMAGES and DEMAND FOR JURY TRIAL** |

Plaintiff JANE DOE commences this action, by her attorneys C. A. Goldberg PLLC, against Defendants ALEX TRIPODI, the CITY OF NEW YORK, the NEW YORK CITY DEPARTMENT OF EDUCATION, and DAVID C. BANKS, in his capacity as CHANCELLOR of the New York City Department of Education as follows:

## PRELIMINARY STATEMENT

1. This lawsuit is about the injuries to child victims when a school district fails to enact appropriate policies to address sexual violence.

2. With 1.1 million students, New York City Department of Education ("NYCDOE") is the largest school district in the country and has a budget of approximately $38,000,000,000 ($38B).

3.     Throughout its history, NYCDOE has resisted hiring personnel to handle incidents of sexual violence involving students. Until 2019, the NYCDOE had only one *Title IX* Coordinator for its entire population of 1.1M students attending 1,800 different schools.

4.     Since 2016, the NYCDOE  has enacted a policy of  discrimination and retaliation against girls who reported sexual violence committed by another classmate during school by refusing to provide protections to victims and instead forcing them to choose between transferring to a different school or remaining in the same school with their abuser.

5.     Victims of sexual violence have been forced to repeatedly encounter their perpetrator, thereby experiencing further trauma and increased likelihood of chronic post-traumatic stress disorder.

6.     NYCDOE's primary method of handling substantiated incidents of sexual violence between students is to compel the victim to transfer to another school (herein referred to as the "Victim Transfer Policy"). Such a transfer is an arduous process that requires the involvement of law enforcement, multiple NYCDOE sub-agencies and/or district offices, and allows the victim no control over where the NYCDOE will send the victim to attend school next.

7.     The NYCDOE's use of the Victim Transfer Policy, as a response to student-on-student sexual violence, primarily impacts students that identify as female.

8.     On April 2, 2015, M.J.B., a thirteen-year-old, eighth grade student at Spring Creek Community School ("Spring Creek"), a New York City Public School located in Brooklyn, New York, was raped by a male student ("S.M.") two blocks away from the school immediately after school was dismissed for the day. S.M. recorded portions of the rape on his mobile phone. The recording was subsequently distributed among students at Spring Creek through social media and repeatedly exhibited on school grounds. M.J.B. reported the rape to Spring Creek staff and

administrators, however no action was taken by school officials to protect her. Instead, M.J.B. became the target of harassment and bullying from her peers. When Spring Creek administrators became aware of the recording and its widespread distribution, they (1) failed to conduct a meaningful inquiry into its circulation; (2) destroyed evidence; (3) interfered with a law enforcement investigation; (4) offered no support to M.J.B. and most importantly here, (5) instructed M.J.B. to stop attending school—a *de facto* execution of the Victim Transfer Policy.

9.     On November 5, 2015, then thirteen-year-old A. E. was physically and sexually assaulted by a male peer at Granville T. Woods Middle School (M.S. 584) who punched her in the vagina, knocking her to the ground, before climbing on top of her and simulating sexual intercourse by grinding his clothed genitals on A.E.'s clothed buttocks. Prior to the assault on A.E., M.S. 584 was already aware that her offender had previously punched another female student in the vagina the day before his assault on A.E. After M.S. 584 administrators learned of the assault on A.E., the school downplayed the assault, calling it an "incident" reporting it to A.E.'s parents as a "fight." The offending student later admitted to A.E.'s factual account and was suspended for one month before being allowed to return to school. M.S. 584 did not report the assault to NYPD, and did not refer A.E. or her parents to a Title IX coordinator, or Social Services. Instead, M.S. 584 allowed the offender to return to school and return to the same classes and classrooms as A.E. who was terrified for her safety. Seeking safety for their child, A.E.'s parents were told that if they did not want A.E. at the same school as her assailant, their only options were to home school A.E. or to transfer her to an Intermediate School—I.M. 275, which happened to be adjacent to the infamous Osborn Playground in Brownsville, NY where one month prior, in January 2016, a 19-year-old girl was allegedly gangraped by five local teenagers.

10.     On February 5, 2016, K.M, a fifteen-year-old sophomore at Teachers Preparatory School in Brooklyn, New York with developmental disabilities and an Individual Education Plan (IEP) was sexually assaulted by fellow students when she was surrounded by seven students who led her into a stairwell and forced her to perform oral sex on two boys. K.M. immediately reported the incident to her guidance counselor. Teachers Prep did not offer K.M. care or support. The school did not arrange for referrals to medical or social services for K.M. Teachers Prep did not ever refer K.M. to "the school social worker, psychologist or other appropriate school staff, or … to community-based agencies for counseling, support, and/or education" (as its own written policies required. Chancellor's Regulation 831-A). Teachers Prep did not even consider how to protect K.M. from her assailants. Instead, without conducting any investigation, a mere 24 hours after K.M. reported the assaults, Teachers Prep administrators determined the assaults were "consensual" and suspended K.M. with a Superintendent's suspension. This determination was made within 24 hours, without any investigation, despite K.M. having zero history of dishonesty or prior relationships with her assailants and her being unable to consent due to her age and developmental disabilities. The Assistant Principal of Teachers Prep later admitted that she had not investigated the matter and had relied on a future investigation happening if K.M.'s parents challenged the suspension. Even after NYPD arrested one of K.M.'s assailants, and the Kings County District Attorney initiated a prosecution against him, Teachers Prep and the NYDOE continued to advocate for K.M.'s suspension to remain in place. Teachers prep forced K.M. to attend "suspension school" at an alternate placement site (ALC-W.E. B Dubois (88K981)) where she was deprived of her IEP resources—a de facto execution of the Victim Transfer Policy. K.M remained suspended until at least March 25, 2016, when DOE notified K.M.'s counsel that the suspension had been discontinued. On April 5, 2016, K.M.'s mother was informed that K.M. was

being transferred, despite neither K.M., her mother, nor her legal counsel being informed or consenting thereto—an actual execution of the Victim Transfer Policy. Ultimately, due to the impending end of the school year, K.M. remained at Teachers Prep.

11.     On or about November 13, 2023, J.M. a minor student at A. Phillip Randolph Campus High School ("APRC"), reported to school officials that she had been sexually assaulted by a male student at the same school and that the offending student was continuing to stalk and harass her both inside and outside of school. School officials at APRC failed to investigate J.M.'s report and continually failed to secure J.M.'s safety against the offending male classmate who continued to stalk and harass J.M. in the hallways and classrooms of APRC on a near-daily basis. J.M. made multiple written and verbal reports to school officials about the ongoing abuse and harassment by her male classmate. School leaders responded by telling J.M., in sum and substance, that it was her responsibility to protect herself from her classmate-rapist and that there was nothing they could do. When J.M. felt too afraid to attend school, she opted to stay home and do her schoolwork remotely. J.M. was told by school leaders that, if she felt unsafe being in school with her classmate-rapist, she needed to enroll in home school or transfer to a different school. The case of J.M. and APRC is yet another example of NYCDOE employees and officials directly applying the Defendant NYCDOE's Victim Transfer Policy.

12.     Involuntary school transfers in the middle of the year have a significant negative impact on academic performance, grade matriculation, and competitiveness for college admission.

13.     This suit *sub judice* relates to Brooklyn Technical High School ("Brooklyn Tech") – one of NYCDOE's most prestigious high schools – learning about a case of extreme abuse perpetrated by one student against another.

14.     In September 2021, administrators at Brooklyn Tech became aware that starting in March 2020 when quarantine protocols shuttered in-person learning, that the perpetrating male student (Defendant TRIPODI) had waged an escalating campaign of abuse and sexual violence against female Plaintiff JANE DOE. Brooklyn Tech learned from JANE DOE's reports and Brooklyn Tech's own investigation that TRIPODI coerced JANE DOE to provide him with naked images and videos, then systematically tortured and blackmailed her with the child sex abuse material ("CSAM" more commonly known as "child pornography"), that he controlled her every move, requiring that she share her device passwords, report her location and activities to him constantly, and only engage in activities that he approved of. Brooklyn Tech learned through JANE DOE's reports and Brooklyn Tech's own investigation that TRIPODI locked JANE DOE out of her own social media accounts, telling her he would only give her access if she followed his "rules" and arbitrary demands, also while threatening to disclose naked images of her to a public social media feed if she did not behave according to his whims.

15.     When in September 2021, JANE DOE reported TRIPODI's abuse and sexual violence to the Brooklyn Tech guidance counselor, it was with the goal of seeking her school's help to keep her safe from encountering her abuser at school. After investigating, the dean stated that it was the "worst case" of student-on-student misconduct he had ever seen.

16.     TRIPODI was arrested by NYPD Special Victims division for his crimes against JANE DOE and put on probation under the supervision of the New York City Department of Corrections. He continued to attend Brooklyn Tech after his arrest and while on probation.

17.     JANE DOE's parents pleaded with Brooklyn Tech to keep their daughter safe from TRIPODI and explained that she was "fearful every day of going to school [because] she might have an encounter with" him.

18. Brooklyn Tech school leaders were deliberately indifferent about the harms JANE DOE was experiencing, and eventually told JANE DOE's parents that the only way for her to avoid encountering TRIPODI would be for *her to change schools* pursuant to the Victim Transfer Policy.

19. The NYCDOE's harmful and objectively offensive Victim Transfer Policy forced JANE DOE to choose one of two situations: a) transfer to a new and unknown school, or b) stay at Brooklyn Tech with TRIPODI.

20. Thus, JANE DOE was forced to decide whether to disrupt her academic progress, lose the spot she had earned at one of the top public high schools in the country, and lose her support network there; or to stay in the school and experience the daily distress of encountering the classmate who had committed sexual violence against her.

21. JANE DOE declined using the Victim Transfer Policy and stayed in her school. However, the choice came with consequences. As a result of reporting the abuse and sexual violence she survived, the environment at Brooklyn Tech became hostile towards JANE DOE. This hostility was in part due to school leaders failing to protect JANE DOE from the obvious harms she suffered by having no protection against her classmate/abuser. After other students began calling TRIPODI out for his abuse, school officials amplified the hostile environment even further, retaliating against and intimidating JANE DOE by threatening to investigate and discipline her for events that were completely out of her control.

22. There was simply no discussion that TRIPODI should be the one to transfer to another school.

23. As exemplified by JANE DOE's experience, NYCDOE's Victim Transfer Policy is the codification of unlawful retaliation against student victims of sexual violence.

24.     The student victims harmed by NYCDOE's Victim Transfer Policy disproportionately identify as female.

25.     Plaintiff JANE DOE brings this action against TRIPODI for the pain and suffering, and other losses she experienced as a result of his intentional gender-motivated violence, battery, assault, coercive production of child pornography, and threats to disseminate intimate imagery.

26.     Plaintiff JANE DOE further brings this action against NYCDOE and its CHANCELLOR for the pain and suffering, educational losses, and deprivation of civil rights she incurred as a result of the CHANCELLOR's unlawful customs and policies, and other acts and omissions the NYCDOE committed in responding to Plaintiff's allegations of sexual violence by a classmate.

## <u>JURISDICTION & VENUE</u>

27.     This Court has jurisdiction over this action pursuant to U.S.C. § 1331 and 1343(a) because it is brought to obtain compensatory and punitive damages for the deprivation, under color of state law, of the rights secured by the United States Constitution, and pursuant to 18 U.S.C. §§ 2252 and 2255, 42 U.S.C. §1983, and 20 U.S.C. §§ 1681-1688. This action is also brought pursuant to the laws and Constitution of the State of New York, and the City of New York administrative codes.

28.     Plaintiff JANE DOE further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), to hear and decide claims arising under state and local law related to claims over which this Court has original jurisdiction. The applicable statutes are New York City Admin. Code §§ 10-180 and 10-1104 and other causes of action arising from intentional torts pursuant to New York common law.

29.     Venue is proper, pursuant to 28 U.S.C. § 1391(b)(1)-(2), because the events and omissions giving rise to Plaintiff's claims occurred in this judicial district.

## PARTIES

30.     JANE DOE, who is proceeding by pseudonym in this action as a victim of gender-motivated violence and sex abuse, is 18 years old, and is a citizen of the United States, residing in New York County.

31.     Upon information and belief, Defendant TRIPODI resides between the State of California and the homes of his mother and father, located in New York County and Queens County, respectively.

32.     At all times relevant to this action JANE DOE was a student enrolled at Brooklyn Technical High School ("Brooklyn Tech"), a public school located at 29 Fort Greene Place, Brooklyn, New York. Brooklyn Tech is ranked as the sixth best high school in New York City and is consistently ranked as one of the top 50 high schools in the country. Students must take a specialized exam to be considered for entry. By some estimations, Brooklyn Tech is more selective than Harvard.[1]

33.     Defendant CITY OF NEW YORK is a municipal corporation, duly organized and existing under the laws of the State of New York.

34.     At all relevant times, the CITY OF NEW YORK operated and operates Defendant NEW YORK CITY DEPARTMENT OF EDUCATION ("NYCDOE") under its authority.

---

[1] Kristin Iversen, Some Brooklyn Public High Schools Are Harder to Get Into Than Harvard, *Brooklyn Magazine* https://www.bkmag.com/2014/06/20/some-brooklyn-public-high-schools-are-harder-to-get-into-than-harvard-2. (Last visited on December 11, 2022).

35.     Defendant NYCDOE is organized and exists pursuant to the laws of the State of New York and is responsible for the administration of educational services for all students enrolled in public schools in the City of New York. According to its own published statistics, Defendant NYCDOE is the largest public school district in the country serving nearly 1.1 million students in over 1,800 schools.[2]

36.     Defendant NYCDOE is a public entity and recipient of federal financial assistance and, therefore, is subject to *Title IX of the Education Amendments of 1972* ("*Title IX*").

37.     At all relevant times, Defendant CHANCELLOR David C. Banks (and his predecessors, collectively, the CHANCELLOR) leads the NYCDOE and is responsible for supervising, enacting, and/or enforcing the Chancellor's Regulations, which govern the conduct, customs, policies, and practices of the NYCDOE.

38.     The CHANCELLOR is also responsible for addressing and correcting the absence of any needed policies, practices, and/or training within the NYCDOE. At all relevant times, the CHANCELLOR, in doing the acts or omissions hereinafter described, acted under color of state law and within the scope of his role as the lead policy official for the NYCDOE.

## **GENERAL ALLEGATIONS AND BACKGROUND**

### ***TRIPODI Abuses and Sexually Exploits JANE DOE***

39.     JANE DOE and TRIPODI met at Brooklyn Technical High School ("Brooklyn Tech") where they were both students. They began dating exclusively in January 2020. At first JANE DOE was taken by TRIPODI's intelligence, charm, and sense of humor. But shortly after they began dating, TRIPODI began abusing JANE DOE by way of control tactics and threats of violence.

---

[2] NYC Department of Education, *DOE Data at a Glance,* https://www.schools.nyc.gov/about-us/reports/doe-data-at-a-glance (last visited Dec. 11, 2022).

40.     On a daily basis, and often during the school day while JANE DOE was tied to her school devices during quarantine, TRIPODI controlled and surveilled JANE DOE, demanding that JANE DOE share her passwords so that TRIPODI could monitor her location and her activities. TRIPODI maintained constant access to JANE DOE's social media accounts without authorization and monitored who she was communicating with as well as what she was posting online.[3] When JANE DOE attempted to stand up to TRIPODI, he would amplify his threats and make her feel stupid and helpless, stating on one occasion, "give me ur [sic] password or I'll get it however the fuck I need to."

41.     TRIPODI also required that JANE DOE always remain available to him. If JANE DOE failed to respond to TRIPODI's calls or texts immediately, he would punish her with threats and verbal abuse. TRIPODI went so far as to require that JANE DOE share screenshots of every text message she sent to *anyone*. TRIPODI further isolated JANE DOE from her friends, demanding that she ask his permission before having text message conversations – and then requiring that she report all the contents of the conversation with him afterwards. TRIPODI completely prohibited JANE DOE from using Facetime (video call) to talk to her friends.

42.     In addition to being psychologically controlling, TRIPODI was physically threatening and menacing to JANE DOE. On at least two occasions, TRIPODI was physically violent with JANE DOE. In 2020, during an argument, TRIPODI pushed JANE DOE forcefully against the front door of the building where she lives. The argument started because JANE DOE refused to give TRIPODI the access code to her apartment building. On another occasion, TRIPODI cornered JANE DOE in the staircase of her apartment and put his hand against her

---

[3] On several occasions, JANE DOE tried contacting social media platforms directly to change her password. But due to the fact that TRIPODI had access to her email, he was able to intervene with those communications and maintain control of JANE DOE's account.

throat. TRIPODI, who is 6 feet tall, seemed to relish in causing extreme fear to JANE DOE, who weighed no more than 100 pounds.

43. In March 2020, when the entire world shuttered under COVID-19 quarantine protocols, TRIPODI lost physical access to JANE DOE. TRIPODI's abuse escalated into incessant and overwhelmingly harmful technology-facilitated abuse, image-based abuse, and sexual exploitation of JANE DOE (herein "sexual violence" and "gender-based violence").

44. Shortly after the COVID-19 quarantine began in mid-March 2020, TRIPODI began coercing JANE DOE into producing child sex abuse material ("CSAM" commonly known as "child pornography") on demand. Under threat by TRIPODI that he would disseminate her intimate (naked) photographs and videos, JANE DOE was forced to produce and send TRIPODI intimate (naked) photographs and videos of herself. On a near daily basis, TRIPODI demanded naked photographs and videos from JANE DOE and would verbally abuse her and threaten harmful consequences if she did not comply with his demands to produce more nude images (photographs and videos) of herself. TRIPODI went so far as to demand that JANE DOE create photographs and videos in specific positions and with specific, intimate body parts exposed at his direction. Hundreds of re-shoots were demanded until he approved.

45. In addition to coercing JANE DOE into producing illegal images, TRIPODI also coerced JANE DOE into performing specific sex acts while he watched. This often happened over Zoom, with the coerced broadcasts originating from JANE DOE's bedroom, which should have been a safe haven – not the epicenter of her exploitation and abuse.

46. TRIPODI invented a cruel game where he would accuse JANE DOE of "lies" and use these accrued lies as a debt that she could only pay off by creating and sending more naked images of herself. JANE DOE's supposed "lies" for which she was punished included such

innocuous behaviors as: "leaving when you said you wouldn't" or "being inconsiderate" or "shaking your head when I said no," or "holding markers when I asked you not to three times."

47.     TRIPODI used the naked images as collateral to keep JANE DOE obedient to his demands.

48.     TRIPODI escalated his manipulations, making JANE DOE believe that she was somehow misbehaving and therefore "owed" him. These manipulations included horrific and never-ending verbal abuse where TRIPODI would berate JANE DOE, calling her: a "liar", "manipulative", "selfish", "deceptive", a "whore", a "slut", "disgusting", a "bitch", or "retarded". When JANE DOE voiced hurt by these verbal abuses, TRIPODI would tell her to "stop acting like a victim" and insisted that *he* was the victim of *her* misbehaviors.

49.     TRIPODI monitored every communication JANE DOE made, to keep her from confiding in her friends. TRIPODI expressed to JANE DOE that if she ever told her friends about their fights, that he would add on more "lies" as a debt in his abusive game.

50.     TRIPODI was irrationally jealous. In approximately January 2021, JANE DOE innocently posted a video of a male drummer to a group of friends on social media. TRIPODI became enraged and demanded that JANE DOE retract the video and insisted that JANE DOE was "disrespecting" him by posting a video of another man. When JANE DOE tried to stand up for herself and didn't immediately delete the video, TRIPODI responded with a countdown threat, stating that if JANE DOE didn't take down the video by "9:01 pm" he would distribute one of her naked images publicly.

51.     After more than a year of suffering this type of abuse, in late spring 2021, JANE DOE summoned the courage to break up with TRIPODI for good.

### ***Brooklyn Tech and NYCDOE Amplified the Abuse***

52.     In September 2021, NYCDOE schools opened their doors for students to return for in-person learning. JANE DOE was extremely distressed about inevitably encountering TRIPODI at school. After finding out that she had been placed in the same Statistics class as TRIPODI, JANE DOE sent an email to her Brooklyn Tech guidance counselor, Ms. Lauren Williams (herein "Williams") reporting that TRIPODI had emotionally, verbally, and sexually abused her.

53.     Williams changed JANE DOE's schedule, but otherwise ignored JANE DOE's report of abuse. Upon information and belief, Williams did not report the sexual abuse allegation, as she is obligated to do as a mandated reporter, nor did Williams take any steps to report TRIPODI's abuse to school leaders to initiate an investigation.[4]

54.     By September 29, 2021, no one at Brooklyn Tech had followed up with JANE DOE about the abuse she'd reported to Williams. On or around that date, JANE DOE returned to Williams' office and reported the abuse again. Williams nonchalantly told JANE DOE that she was going to "get around to talking to her" about it. This was nearly three weeks after JANE DOE's initial report by email to Williams that she had been "emotionally, verbally, and sexually abused."

55.     The inexcusable delay in commencing the investigation foreshadowed how broken and woefully inadequate the school's investigation and its aftermath would become.

56.     On or about the first week of October 2021, Dean of the School Christian Clarke (herein "Dean Clarke") asked JANE DOE to provide him with evidence that TRIPODI had coerced JANE DOE into producing naked images of herself. At the time he made this request, Dean Clarke was aware that any nude images depicting JANE DOE were made when she was 15 or 16 years of age. He knew, or should have known, that JANE DOE would be violating New York state and

---

[4] Chancellor's Regulation *A-831* ("*Reg. A-831*") states that complaints of sexual harassment may "be made verbally or in writing" to a designated staff member. When a report is made to a staff member other than the designated staff member, the designated staff member must be notified. *Reg. A-831* further requires that all reports are investigated as soon as practicable, but no later than five (5) days after the school receives the report by the victim.

Federal child pornography laws by providing any such images. Moreover, Dean Clarke's potential receipt, retention, and additional sharing of images would also have violated state and federal child pornography laws.

57.    JANE DOE complied and shared with Dean Clarke screenshots of explicit text messages sent between TRIPODI and JANE DOE, avoiding any messages that included illegal CSAM.

58.    On or about early November 2021, Dean Clarke informed JANE DOE and her parents that he had interviewed TRIPODI and that TRIPODI had not denied JANE DOE's allegations. Dean Clarke also informed JANE DOE and her parents that TRIPODI had provided a written statement and a written apology letter ("Apology Letter") to JANE DOE which he (Dean Clarke) would share with them.

59.    Dean Clarke never provided JANE DOE or her parents with a copy of TRIPODI's Apology Letter. Instead, Dean Clarke took JANE DOE alone into a room and gave her one opportunity to read it. JANE DOE awkwardly sat alone with Dean Clarke, silently reading her abuser's words – and sobbing in distress. Once JANE DOE was done reading the Apology Letter, Dean Clarke required that she return it. She was not allowed to keep a copy. Dean Clarke also read the Apology Letter aloud to JANE DOE's parents, stating that he (Dean Clarke) was not allowed to provide the written apology to them as a matter of policy.[5]

60.    Alarmingly, Clarke also stated to JANE DOE that he had personally supervised and witnessed TRIPODI deleting the CSAM depicting JANE DOE from his (TRIPODI's) phone. In doing so, upon information and belief, Dean Clarke inappropriately and illegally viewed CSAM

---

[5] To this date, school officials have not provided an explanation, nor have they pointed to a specific NYCDOE policy, that disallows them from sharing the Apology Letter.

and oversaw the destruction of evidence that should have been properly preserved and provided to law enforcement.

61.     Upon information and belief, NYCDOE has failed to provide proper training on how to investigate misconduct involving image-based sexual abuse of minors, and/or CSAM. Upon information and belief, despite how common the scourge of image-based sex abuse has become, and the particularly high impact it has on female-identifying preteens and teenagers, the NYCDOE and its CHANCELLOR have failed to implement meaningful policies and procedures upon which school-level officials should investigate, report, and refrain from the spoilation of evidence in such cases.

62.     Upon information and belief, school officials at Brooklyn Tech failed to contact law enforcement, NYCDOE legal counsel, and/or an NYCDOE *Title IX* Coordinator to report the investigation into JANE DOE's allegations of sexual violence and the evidence of child sexual abuse material ("CSAM"). Instead, school officials treated the investigation with no more seriousness than if a student was caught cheating on a test. Rather than addressing JANE DOE's abuse report in a way that was supportive of JANE DOE and her needs as a child survivor or sexual violence, Brooklyn Tech officials simply advised JANE DOE's parents that the matter should be handled by law enforcement.[6]

63.     Rather than properly and adequately investigating and reporting Plaintiff's report of sexual assault, sexual harassment, CSAM, stalking, and harassment, and properly ensuring Plaintiff's safety from the criminally-offending TRIPODI, Brooklyn Tech Officials applied, enacted, and executed NYCDOE's unlawful and devastatingly harmful Victim Transfer Policy.

---

[6] *Reg. A-831* also states that if the designated staff member believes that alleged student misconduct constitutes criminal activity, then the police must be contacted. If the report cannot be investigated at the school level due to the nature and seriousness of the allegations, the designated staff member must consult with the NYCDOE's *Title IX* Coordinator.

64. Upon information and belief, TRIPODI was arrested by NYPD Special Victims officers and subsequently put on juvenile probation under the supervision of the New York City Department of Corrections.

65. Subsequent to TRIPODI's sentencing to juvenile probation, Brooklyn-Tech failed to properly secure Plaintiff's safety and well-being from TRIPODI and instead applied, enacted, and executed NYCDOE's unlawful and devastatingly harmful Victim Transfer Policy.

### *The Result and the Backlash*

66. In the period of time before the school began seriously investigating JANE DOE's claims, some of her friends spoke out about TRIPODI's abusive conduct and his dangerous behavior directed at a female student. In response, TRIPODI began lashing out publicly against JANE DOE. He published a statement to his public social media account, which maligned JANE DOE, defended his own abusive and controlling conduct, and called JANE DOE a liar.

67. As a result of TRIPODI's public statement, the abuse allegations against him drew even more attention and, predictably, became the subject of conversation and agitation among the student body at Brooklyn Tech.[7] Graffiti appeared in the boys' bathroom and in the hallways of Brooklyn Tech, reading, "FUCK ALEX" and "ALEX TRIPOTLE IS SCUM."[8]

68. Later, as the overall outrage among students increased, graffiti appeared on the walls of Brooklyn Tech hallways reading "BTHS HIDES ABUSERS."

69. Around this time, Dean Clarke 's investigation resulted in the school substantiating JANE DOE's claims of abuse by TRIPODI. Dean Clarke informed JANE DOE and her parents that it was the "worst case" he had ever investigated.

---

[7] In a later phone call with JANE DOE's father, Dean Clarke described this as "cognitive dissonance" in the student body due to Brooklyn Tech's handling of JANE DOE's abuse allegations.
[8] The misspelling of TRIPODI's last name was a reference to TRIPODI'S social media account handles, which at the time were "tripotle" (a portmanteau of his last name and Chipotle).

70.     In an objectively offensive turn of events, school officials communicated to JANE DOE that she was somehow responsible for the conduct being directed at TRIPODI by other students. JANE DOE told Dean Clarke directly that she had nothing to do with the actions being taken by others – yet she was being questioned by school officials. Not only did school officials question and treat JANE DOE as if she directly involved but they also communicated to her that she was responsible for stopping other students' harassing conduct towards TRIPODI.

71.     Many of JANE DOE's friends, who had called out TRIPODI for his public statement, were investigated and disciplined.

72.     This caused significant distress to JANE DOE, who wanted to focus on schoolwork and college applications and avoid any mention of - or future encounter with - TRIPODI.  It was particularly distressing because it seemed to JANE DOE that it was *TRIPODI himself* that amplified attention to his own abusive conduct when he published a public statement in response to the allegations. JANE DOE believed that the student body response was more likely attributed to Brooklyn Tech's deliberate indifference towards victims of sexual violence than anything she had done.

73.     Attending school became a living nightmare for JANE DOE.  It started with the severe distress of encountering her abuser at school and was further amplified by the betrayal and hopelessness she felt after school leaders communicated made her feel responsible for the backlash TRIPODI himself had brought on. The environment at Brooklyn Tech had become so abusive and hostile that it altered the conditions of JANE DOE's education to her severe detriment.

74.     At times, JANE DOE would feel so distressed that she would hide in the bathroom and cry, unable to attend class. Other times, she would hide her tears but sit in class completely dissociated and unable to complete academic tasks. JANE DOE actively avoided areas of campus

where TRIPODI might be. JANE DOE's friends alerted her when they saw TRIPODI, so that she could avoid where he was. On one occasion, she saw TRIPODI in the library, was startled, and hid herself away to cry.

75.     Brooklyn Tech officials were presumably aware of what JANE DOE was experiencing at school because Williams offered to write JANE DOE notes to excuse her from class when she felt too emotionally distressed to attend.

76.     During a phone call with JANE DOE's father in November 2021, Dean Clarke stated that the school was "trying to diffuse the situation right now before it escalates to something worse." In the same breath, Dean Clarke admitted that Brooklyn Tech's lack of response to TRIPODI's abuse of JANE DOE had "sent the wrong message to the community" and that Brooklyn Tech's inaction had likely caused the backlash that was being directed at TRIPODI.

77.     When JANE DOE's father inquired as to the apparent lack of consequences to TRIPODI, Dean Clarke said he would have liked to suspend TRIPODI, but that it was not NYCDOE's custom to suspend students in this type of situation. Dean Clarke further rationalized the absence of school-based consequences on TRIPODI by arguing that TRIPODI's abusive conduct had occurred during a "previous school year" and because the abuse had been "cyber based."[9]

78.     JANE DOE's father begged Dean Clarke to think of a creative solution to keep JANE DOE from encountering her abuser at school. Dean Clarke stated that there was nothing Brooklyn Tech school leaders could do to protect JANE DOE, and that the only option for keeping

---

[9] In October 2021, the NYCDOE amended *Reg. A-831* to expand the definition of student-on-student sexual harassment to include electronically communicated forms, including but not limited to "internet, cell phones, personal digital assistant, texting, apps, wireless handheld devices, social media, chat rooms, gaming systems, and blogs."

her safe, per NYCDOE policy, was for *JANE DOE* to transfer to a different school (described throughout as "the Victim Transfer Policy").

79. In other words, JANE DOE, the victim of sex crimes by a fellow classmate – whose abuse claims had been substantiated by a school investigation – had to give up the seat she had earned in one of the country's best high schools, rather than expect any protection from further encounters with her abuser at school.

80. At the time JANE DOE's parents were told about the Victim Transfer Policy, JANE DOE was already three months into her final year of high school.

81. The NYCDOE's Victim Transfer Policy is inherently harmful to victims of gender-based violence and sexual violence, which disproportionately impact students that identify as female.

82. The NYCDOE's Victim Transfer Policy was, in fact, *directly harmful* to JANE DOE because it required her, an already-vulnerable child victim of sexual violence, to choose between two types of educational deprivation. She had to either a) transfer to a new and unknown school and disrupt her education, or b) stay in her school of choice, but experience the daily disruption and distress of encountering her classmate-abuser with no protection provided by school leadership.

83. Dean Clarke further stated that he would discuss the situation with people "higher up" than him to get more answers. However, Dean Clarke never followed up on this offer – leaving JANE DOE to fend for herself in the halls of Brooklyn Tech, every day, until she graduated.

### *The Damage Suffered by JANE DOE*

84. As a result of TRIPODI's sexual violence, JANE DOE suffered extreme distress and significant trauma. The trauma caused JANE DOE to experience increased anxiety,

hopelessness, sleeplessness, an inability to eat, and an inability to focus on academic or personal tasks.

85.     JANE DOE was so traumatized that being in her own bedroom, where much of the sex abuse took place using devices that JANE DOE used *while attending online school during the pandemic*, caused her severe distress and anxiety. Her own home, her own bedroom – once a cocoon of safety and comfort, became four suffocating walls of terror. As did her school when she returned to in-person classes. JANE DOE could not feel safe anywhere.

86.     As a result of the school's inaction in protecting her while at school and while taking part in school activities, JANE DOE suffered significant distress. The distress caused by Defendants' actions and omissions increased and amplified JANE DOE's feelings of anxiety, hopelessness, sleeplessness, inability to eat, and inability to focus on academic or personal tasks. JANE DOE's fear of encountering TRIPODI at school caused her to avoid being alone on campus, and to avoid specific parts of campus where she believed she might run into TRIPODI. JANE DOE experienced severe distress when she saw TRIPODI at school and often missed class to hide in the bathroom while crying.

87.     As a result of the school's retaliation toward JANE DOE, by blaming her and making her responsible for other students' conduct towards TRIPODI – she suffered significant distress. JANE DOE avoided going anywhere on campus without being accompanied by a friend, partly out of her reasonable fear that something bad would happen and she would not have a witness or alibi to vouch for her.

88.     JANE DOE, who had been a straight A student at one of the country's top high schools, should have continued excelling into and through her final year. Instead, JANE DOE suffered from crippling anxiety that caused her to skip classes and miss assignments. Her grades

dropped and JANE DOE's educational prospects fell into jeopardy as her anxiety, depression, and feelings of inferiority impacted her applications for college. JANE DOE's parents paid for a private tutor and consultant to support JANE DOE, who had taken on an uncharacteristically meek attitude: "I'll get in wherever." She completely abandoned the mindset of the formerly ambitious, in control, confident young girl she had been before.

89.     As such, JANE DOE was deprived of the educational opportunities she was entitled to. She needlessly experienced ongoing emotional and psychological harm, which was perpetuated and amplified by school officials who had an obligation to protect her well-being – but instead blamed her for the school's hostile environment and callously turned a blind eye to her suffering.

90.     JANE DOE has since been diagnosed with post-traumatic stress disorder (PTSD) and receives therapy in the form of trauma-focused treatment for her symptoms.

## FIRST CAUSE OF ACTION
### VIOLATION OF NYC ADMIN CODE §10-1104
### (GENDER-MOTIVATED VIOLENCE ACT)
### PLAINTIFF JANE DOE AGAINST DEFENDANT TRIPODI

91.     Plaintiff repeats and re-alleges the allegations in each of the preceding paragraphs as if fully set forth herein.

92.     Defendant TRIPODI's actions as described above constituted crimes of violence defined in the New York City Administrative Code § 8-903.

93.     Defendant TRIPODI's actions constituted sex crimes as defined in New York Penal Law.

94.     Defendant TRIPODI's crimes of violence were motivated by plaintiff's gender as defined in New York City Administrative Code §8-903, as evidenced by the facts set forth above.

95.     Defendant TRIPODI's conduct presented a serious risk of physical injury.

96.     By reason of the foregoing, Plaintiff was damaged and injured, and sustained significant mental anguish and emotional distress. These injuries are likely to be permanent in nature.

**SECOND CAUSE OF ACTION**
**18 U.S.C. 2255 CIVIL REMEDY FOR PERSONAL INJURIES**
**PLAINTIFF JANE DOE AGAINST DEFENDANT TRIPODI**

97.     Plaintiff repeats and re-alleges the allegations in each of the preceding paragraphs as if fully set forth herein.

98.     As a victim of 18 U.S.C. §§ 2252 and 2252A, Plaintiff JANE DOE suffered personal injury.

99.     Plaintiff suffered indignity and loss of privacy.

100.    Plaintiff's injury was amplified by the fact that Defendant TRIPODI coerced her into producing child sex abuse material under the threat of harm.

101.    Plaintiff seeks actual damages or liquidated damages in the amount of $150,000 per each image for each incident of CSAM production, and the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred, punitive damages, and preliminary and equitable relief as the court determines to be appropriate.

**THIRD CAUSE OF ACTION**
**BATTERY under NEW YORK STATE LAW**
**PLAINTIFF JANE DOE AGAINST DEFENDANT TRIPODI**

102.    Plaintiff repeats and re-alleges the allegations in each of the preceding paragraphs as if fully set forth herein.

103.    Defendant TRIPODI intended to cause contact with JANE DOE without her consent.

104.    Defendant TRIPODI's intentional contact was harmful to JANE DOE.

105. As a result of Defendant's intentional and non-consensual contact, JANE DOE suffered injuries.

## FOURTH CAUSE OF ACTION
### ASSAULT under NEW YORK STATE LAW
### PLAINTIFF JANE DOE AGAINST DEFENDANT TRIPODI

106. Plaintiff repeats and re-alleges the allegations in each of the preceding paragraphs as if fully set forth herein.

107. Defendant TRIPODI's actions caused JANE DOE fear and apprehension.

108. Defendant TRIPODI's purposeful and non-consensual contact with JANE DOE put her in fear of her physical safety and well-being.

109. Defendant TRIPODI's actions and threats caused JANE DOE to be fearful of harmful and offensive contact.

110. As a result of Defendant TRIPODI's actions, JANE DOE suffered harm.

## FIFTH CAUSE OF ACTION
### THREAT TO DISSEMINATE AN INTIMATE IMAGE under NEW YORK CITY
### ADMINISTRATIVE CODE § 10-180
### PLAINTIFF JANE DOE AGAINST DEFENDANT TRIPODI

111. Plaintiff repeats and re-alleges the allegations in each of the preceding paragraphs as if fully set forth herein.

112. Defendant TRIPODI threatened to disclose an intimate image depicting JANE DOE, without her consent, with the intent to cause harm.

113. The intimate image that Defendant TRIPODI threatened to disclose depicted JANE DOE in an identifiable manner.

114. JANE DOE suffered harm as a result of Defendant TRIPODI's threats to disclose intimate images depicting JANE DOE.

## SIXTH CAUSE OF ACTION
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## under NEW YORK STATE LAW
## PLAINTIFF JANE DOE AGAINST DEFENDANT TRIPODI

115.     Plaintiff repeats and re-alleges the allegations in each of the preceding paragraphs as if fully set forth herein.

116.     Defendant TRIPODI's intentional conduct was outrageous and extreme and caused harm to JANE DOE.

117.     As a result of TRIPODI's intentional outrageous and extreme conduct, JANE DOE suffered extreme emotional distress.

## SEVENTH CAUSE OF ACTION
## UNCONSTITUTIONAL CUSTOM, PRACTICE, POLICY
## UNDER 42 U.S.C. § 1983 AND *MONELL*
## PLAINTIFF JANE DOE AGAINST THE CITY OF NEW YORK

118.     Plaintiff JANE DOE hereby realleges and incorporates by reference the allegations set forth above as if set forth in full herein.

119.     JANE DOE has the right under the Due Process clause of the Fourteenth Amendment of the U.S. Constitution, and under *Title IX* Education Amendments of 1972, to be protected from procedures and policy of state actors that disparately impact her based on her sex.

120.     This action concerns, *inter alia*, the refusal of the NYCDOE and the CHANCELLOR to uphold the federally protected rights of female victims of student-on-student sexual violence and/or gender-based violence.

121.     The NYCDOE and the CHANCELLOR failed to implement procedures and policies that protect access to education afforded to female students after they are victims of student-on-student sexual violence.

122.     The NYCDOE and CHANCELLOR have created and implemented an unlawful *de facto* policy of offering victims of sexual and gender-based violence the choice between attending school with their assailants or transferring to a different school— known as the Victim Transfer Policy.

123.     The policies and customs implemented by the NYCDOE and the CHANCELLOR directly harm female students after they are victims of student-on-student sexual violence by forcing them to accept educational deprivation as an inevitable outcome of their status as a victim of sexual violence.

## EIGHTH CAUSE OF ACTION
### VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972
### 20 U.S.C. § 1681, *et seq* (DELIBERATE INDIFFERENCE)
### PLAINTIFF JANE DOE AGAINST THE CITY OF NEW YORK

124.     Plaintiff JANE DOE hereby realleges and incorporates by reference the allegations set forth above as if set forth in full herein.

125.     Defendant NYCDOE and the CHANCELLOR acted with deliberate indifference in failing to protect JANE DOE from encountering the abuser/classmate who had inflicted gender-based violence against her during school hours and during school-sanctioned activities.

126.     Defendant acted with deliberate indifference in failing to protect JANE DOE from the foreseeable impact encountering abuser in school would have.

127.     Defendant acted with deliberate indifference by maintaining a policy that required the victim of sexual violence to disrupt her education by transferring to a different school.

128.     Defendant's deliberate indifference altered the conditions of JANE DOE's educational environment to her detriment.

## NINTH CAUSE OF ACTION
### VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972
### 20 U.S.C. § 1681, *et seq* (HOSTILE ENVIRONMENT)

129.     Plaintiff JANE DOE hereby realleges and incorporates by reference the allegations set forth above as if set forth in full herein.

130.     Defendant NYCDOE and the CHANCELLOR's acts and omissions resulted in Plaintiff JANE DOE enduring a hostile and abusive environment after her abuser's conduct was substantiated and the school failed to take meaningful action to protect her.

131.     The environment was permeated with discriminatory intimidation, ridicule, and insult so severe and pervasive that it altered the conditions of JANE DOE's educational environment to her detriment.

132.     Defendant NYCDOE and the CHANCELLOR's acts and omissions caused JANE DOE harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, for the foregoing reasons, JANE DOE demands judgment against the Defendants as follows:

a.     Compensatory damages in an amount according to proof, which is fair, just, and reasonable;

b.     Punitive damages under federal law and New York State and New York City law, in an amount according to proof which is fair, just, and reasonable against Defendants, except the municipality Defendant;

c.     Actual or liquidated damages in the amount of $150,000 per image for each incident of dissemination (whichever is greater) pursuant to 18 U.S.C. § 2255;

d.     Attorney's fees and costs of suit under 18 U.S.C. §§ 2252 and 2255;

e.     All other damages, penalties, costs, interest, and attorney's fees allowed by 18 U.S.C. §§ 2252A and 2255 and as otherwise allowable under New York State and/or federal law.

f.      Attorney's fees and costs of suit available as a remedy under 42 U.S.C. § 1983;

g.      Attorney's fees and costs of suit available as a remedy under 20 U.S.C. § 1681 ("*Title IX*");

h.      Attorney's fees and costs of suit available as a remedy under New York State law;

i.      Attorney's fees and costs of suit available as a remedy under New York City administrative code;

j.      All other damages, penalties, costs, interests, and attorney's fees as allowed by Federal, state, and city law;

k.      For such other and further relief that the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff JANE DOE hereby demands a jury trial on all causes of action.


Respectfully submitted on May 19, 2025.


                              **C. A. Goldberg PLLC**
                              Attorneys for Plaintiff JANE DOE

                    By:     /s/ John Aaron Stark
                              John Aaron Stark
                              New York Bar No.: 6087746
                              16 Court Street, 33rd Floor
                              Brooklyn, NY 11241
                              Phone: 646-666-8908
                              Email: aaron@cagoldberglaw.com