No. 22 CV 7773 (OEM)(RML)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JANE DOE,

*Plaintiff*,

- against -

NEW YORK DEPARTMENT OF EDUCATION, the CITY OF NEW YORK, and CHANCELLOR DAVID C. BANKS in his official capacity, and ALEX TRIPODI,

*Defendants*.

**MEMORANDUM OF LAW IN SUPPORT OF THE DOE DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**MURIEL GOODE-TRUFANT**
*Corporation Counsel of the City of New York*
Attorney for Defendants New York City Department of Education, City of New York, and Chancellor Melissa Aviles-Ramos
100 Church Street
New York, NY 10007

Of Counsel: David S. Thayer
Tel: (212) 356-2649
Matter No. 2022-075851

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ III

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF MATERIAL AND ALLEGED FACTS ............................................... 3

PROCEDURAL HISTORY................................................................................................... 4

ARGUMENT .......................................................................................................................... 5

LEGAL STANDARD............................................................................................................. 5

      POINT I ..................................................................................................... 6

           PLAINTIFF'S CLAIMS UNDER § 1983 FAIL AS
           A MATTER OF LAW. ................................................................. 6

      POINT II ................................................................................................... 13

           THE CITY OF NEW YORK IS NOT A PROPER
           DEFENDANT IN THIS ACTION. ............................................ 13

CONCLUSION..................................................................................................................... 14

CERTIFICATION ............................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................. 5, 6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................. 5, 6

*Chapman v. City of New York*,
   No. 06-CV-3153(ENV)(JMA), 2011 U.S. Dist. LEXIS 34221 (E.D.N.Y. Mar. 25, 2011) ............................................................................................................................. 13

*Clarke v. Antonini*,
   No. 21 Civ. 1877 (NSR), 2022 U.S. Dist. LEXIS 171707 (S.D.N.Y. Sept. 22, 2022) ..................................................................................................................................... 8

*Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*,
   489 U.S. 189 (1989) .................................................................................................................. 7

*Doe v. Haas*,
   427 F. Supp. 3d 336 (E.D.N.Y. 2019) ...................................................................................... 6

*Doe v. Torrington Bd. of Educ.*,
   No. 3:15-cv-00452 (MPS), 2016 U.S. Dist. LEXIS 159091 (D. Conn. Nov. 17, 2016) ........................................................................................................................................ 7

*Faccio v. Eggleston*,
   1:10-CV-783 (LEAD); 1:10-CV-699 (MEMBER), 2011 U.S. Dist. LEXIS 93649 (N.D.N.Y. Aug. 22, 2011) ........................................................................................... 7

*Giaccio v. City of New York*,
   308 F. App'x 470 (2d Cir. 2009) ......................................................................................... 9, 10

*Green v. City of New York*,
   465 F.3d 65 (2d Cir. 2006) ........................................................................................................ 9

*Harris v. City of Newburgh*,
   No. 16-CV-2731 (KMK), 2017 WL 4334141 (S.D.N.Y. Sept. 7, 2017) ................................ 10

*Hawthorne ex rel. Hawthorne v. County of Putnam*,
   492 F. Supp. 3d 281 (S.D.N.Y. 2020) ...................................................................................... 8

*Joseph v. Doe*,
   16-CV-2004 (PKC)(LB), 2017 U.S. Dist. LEXIS 155426 (E.D.N.Y. Sept. 22,
   2017) ............................................................................................................................9, 10, 11

*Kia P. v. Mcintyre*,
   235 F.3d 749 (2d Cir. 2000) ..................................................................................................7

*Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of
   Huntington*,
   31 F.3d 1191 (2d Cir. 1994) ..................................................................................................6

*Lowrance v. Achtyl*,
   20 F.3d 529 (2d Cir. 1994) ....................................................................................................7

*Maram v. City of New York*,
   No. 15 Civ. 2017, 2016 WL 916424 (S.D.N.Y. Mar. 7, 2016) ............................................10

*Molina v. New York*,
   21-CV-3144 (RPK)(JMW), 2023 U.S. Dist. LEXIS 8961 (E.D.N.Y. Jan. 17,
   2023) .....................................................................................................................................8

*Overhoff v. Ginsburg Dev., LLC*,
   143 F. Supp. 2d 379 (S.D.N.Y. 2001) ...................................................................................8

*Romero v. City of New York*,
   839 F. Supp. 2d 588 (E.D.N.Y. 2012) ................................................................................13

*Sharkey v. Quarantillo*,
   541 F.3d 75 (2d Cir. 2008) ....................................................................................................6

*Sotomayor v. City of New York*,
   862 F. Supp. 2d 226 (S.D.N.Y. 2012) .................................................................................13

*Triano v. Town of Harrison*,
   895 F. Supp. 2d 526 (S.D.N.Y. 2021) ...................................................................................8

**Statutes**

42 U.S.C. § 1983 ................................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 12 ..........................................................................................................3, 5, 14

Fed. R. Civ. P. 25 ....................................................................................................................1

U.S. Const. amend. XIV ................................................................................................1, 6, 7

## PRELIMINARY STATEMENT

Pseudonymous Plaintiff Jane Doe attended Brooklyn Technical High School with Defendant Alex Tripodi, a student with whom Plaintiff had a dating relationship. During the course of their relationship, Tripodi allegedly sexually harassed Plaintiff through the period of remote learning during the COVID-19 pandemic with telephone calls, text messages, and physical confrontations. Defendants City of New York, Chancellor Melissa Aviles-Ramos,[1] and the New York City Department of Education (collectively, the "DOE Defendants") were unaware of this harassment during its commission by Tripodi. Instead, after Plaintiff and Tripodi had ended their relationship and they were returning to in-person learning for their senior year in the 2021-2022 school year, Plaintiff informed New York City Department of Education ("DOE") staff of Tripodi's harassing behavior. DOE promptly ensured that Plaintiff and Tripodi were not in the same classes, and several weeks later, began an investigation in earnest into Plaintiff's complaint.

Plaintiff asserts that DOE's response to her complaint was inadequate and that the response created a hostile learning environment at school, both in violation of Title IX's prohibitions on discrimination in educational settings on the basis of sex. Plaintiff also contends that DOE's policies and practices attendant to Title IX investigations were constitutionally inadequate insofar as they allegedly require victims of harassment to transfer schools, rather than harassers, and because DOE also has failed to implement appropriate policies or to follow extant policies in connection with Title IX complaints and investigations.

Plaintiff's claims against the DOE Defendants, under 42 U.S.C. § 1983, for violations of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, must

---

[1] Automatically substituted pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, in light of the fact that, as the caption makes clear, the Chancellor was originally named in his official capacity.

1

fail. Plaintiff was not denied any process to which she was due, and DOE's response to Plaintiff's complaint was not so shocking as to amount to a deprivation of substantive due process. Finally, to the extent that Plaintiff asserts that DOE policies fail to protect students, this is not a cognizable claim, and where she contends that policies should be promulgated, she has not adequately pleaded the existence of widespread misconduct by DOE employees to trigger such a constitutional duty. Where she contends that DOE Defendants have an unlawful policy of offering to victims a choice between remaining at school with their harassers or transferring, Plaintiff has likewise failed to adequately plead the existence of such a policy, practice, or custom, relying on scant and inapposite comparators.

Next, the City of New York is not a proper party to this action, in which all of the relevant facts relate to the DOE, a legal entity separate from the City of New York. As such, the City should be dismissed from this action.

Lastly, the DOE Defendants maintain that the first Amended Complaint ("FAC"), (ECF No. 52), should be dismissed because Title IX does not govern the appropriateness of DOE's response to Plaintiff's complaint because the DOE Defendants did not have substantial control over the conduct giving rise to the complaint and because her Section 1983 claims subsumes some or all of Plaintiff's Title IX claim. (*See generally* DOE Defs.' Mem. of Law Supp. Mot. to Dismiss, at pp. 5-11, 13-14.) However, the DOE Defendants recognize that the Court has ruled on these arguments in its July 24, 2024 Memorandum and Order, (ECF No. 37), on Plaintiff's prior Complaint; rather than rehashing them here, the DOE Defendants simply incorporate these arguments and reserve the right to raise them on appeal.

Accordingly, DOE respectfully requests that this Court issue an order pursuant to Rule 12 of the Federal Rules of Civil Procedure dismissing the FAC and all claims against the DOE Defendants in this action.

## STATEMENT OF MATERIAL AND ALLEGED FACTS

Plaintiff Jane Doe brings multiple claims against Defendant Alex Tripodi and DOE that arises out of a relationship between Plaintiff and Tripodi that lasted from January 2020 to "late spring 2021." (FAC ¶¶ 39, 51.) During this time, Plaintiff and Tripodi were students at DOE's Brooklyn Technical High School ("Brooklyn Tech"). (*Id.* ¶ 39.)

Plaintiff alleges that, shortly after entering her relationship with Tripodi in January 2020, he became physically, emotionally, and sexually abusive to her and that this behavior worsened with the onset of the COVID-19 pandemic in March 2020, when remote learning began and there was no in-person attendance at DOE schools. (*See id.* ¶¶ 39-40, 43.)

In September 2021, when returning to in-person learning, Plaintiff first reported to DOE that Tripodi had previously harassed her, and she was concerned she would encounter Tripodi at school. (*See id.* ¶ 52.) The guidance counselor to whom Plaintiff made her report changed Plaintiff's schedule to separate her from Tripodi but allegedly took no immediate further investigatory action. (*Id.* ¶¶ 53-54.) Brooklyn Tech did ultimately conduct an investigation in early October and, when interviewed during this investigation, Tripodi allegedly did not deny the abusive behavior. (*Id.* ¶¶ 56, 58.) In connection to Brooklyn Tech's investigation, Plaintiff alleges that DOE did not properly train and implement its policies with respect to handling intimate images of minor students such as Plaintiff and that they failed to contact law enforcement or a Title IX coordinator. (*Id.* ¶¶ 61-63.)

After Plaintiff made her report, Plaintiff's friends and other students began to criticize Tripodi, leaving graffiti about him in hallways and bathrooms, and Brooklyn Tech staff allegedly told Plaintiff that she was responsible for this backlash against Tripodi. (*Id.* ¶¶ 66-68, 70-71.) Plaintiff alleges that her being questioned about the vandalization and backlash against Tripodi, and the school's investigation of her friends' actions, caused her distress. (*Id.*¶¶ 72-74.) Plaintiff also alleges that her father was told that she could, consistent with a purported DOE policy, transfer to another school, (*id.* ¶ 78), though Plaintiff declined this option, (*id.* ¶ 21).

Plaintiff contends that, as a result of DOE's purported indifference, she suffered "significant distress," amplifying "feelings of anxiety, hopelessness, sleeplessness, inability to eat, and inability to focus on academic or personal tasks" as well as a loss of educational opportunity. (*Id.* ¶ 86-87, 89.) This allegedly resulted in her parents hiring a tutor and consultant to support Plaintiff, and Plaintiff has since purportedly been diagnosed with post-traumatic stress disorder. (*Id.* ¶¶ 88, 90.)

## **PROCEDURAL HISTORY**

On December 21, 2022, Plaintiff filed her Complaint in this Court, accompanied by a motion seeking to proceed pseudonymously. (ECF Nos. 1, 3.) On the same day, summonses were issued as to the DOE (*i.e.*, against the Defendants encompassed within that term, as defined *supra*), (ECF No. 9), and Plaintiff's motion to proceed pseudonymously was granted on January 5, 2023, (ECF No. 10). DOE thereafter filed a pre-motion letter on March 24, 2023, consistent with the Individual Practices of Judge Amon, to whom this action was then assigned. (ECF No. 17.)

At a pre-motion conference on May 1, 2023, Judge Amon discussed the DOE's (and Tripodi's) pre-motion letters and also briefly held settlement discussions off the record. In

light of these discussions, Judge Amon scheduled a settlement conference before her on May 24, 2023. Subsequently, this action was assigned to the Honorable Orelia E. Merchant.

The DOE Defendants subsequently moved to dismiss the first Complaint. (*See generally* ECF Nos. 30-34.) On July 26, 2024, the Court granted in part and denied in part the DOE Defendants' motion to dismiss. (ECF No. 37.) Specifically, the Court dismissed Plaintiff's Section 1983 claims but permitted her Title IX claims to proceed. (*See id.* at pp. 8, 11.)

Plaintiff subsequently sought – and received – leave to amend her complaint. (*See* Order, May 5, 2025.) On May 19, 2025, Plaintiff filed her FAC, (ECF No. 52), repleading her Section 1983 claim by purporting to identify other instances in which the DOE applied an allegedly unlawful policy to students other than Plaintiff Jane Doe. (*E.g.*, FAC ¶¶ 8-11.)

## ARGUMENT

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "[f]actual allegations" that are "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Sufficient facts must be provided to "state a claim to relief that is plausible on its face[,]" *id.* at 570, which only occurs when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint is deficient if it does not contain "enough facts to raise a reasonable expectation that discovery will reveal evidence" of the alleged violation. *Twombly*, 550 U.S. at 556. Though courts must accept as true all of the factual allegations contained in a complaint when evaluating a motion to dismiss under of Rule 12, *Iqbal*, 556 U.S. at 678, this requirement is "inapplicable to legal conclusions"—a court should not give credence to "[t]hreadbare recitals of the elements of a

cause of action" or "mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008).

## POINT I

### PLAINTIFF'S CLAIMS UNDER § 1983 FAIL AS A MATTER OF LAW.

Plaintiff alleges that the policies, practices, and customs of the DOE resulted in a deprivation of her rights under the Due Process Clause[2] of the Fourteenth Amendment to the U.S. Constitution. Specifically, Plaintiff alleges that DOE "failed to implement procedures and policies that protect access to education afforded to female students after they are victims of student-on-student sexual violence" and that the extant "policies and customs" of the DOE "directly harm female students after they are victims of student-on-student sexual violence by forcing them to accept educational deprivations as an inevitable outcome of their status as a victim of sexual violence." (FAC ¶ 121, 123.)

"To state a claim for a procedural due process violation a plaintiff must 'first identify a property right, second show that the government has deprived him of that right, and third show that the deprivation was effected without due process.'" *Doe v. Haas*, 427 F. Supp. 3d 336, 348 (E.D.N.Y. 2019) (internal alterations omitted) (quoting *Local 342, Long Island Pub. Serv. Emps., UMD, ILA, AFL-CIO v. Town Bd. of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994)). From the Complaint, DOE cannot discern what, if any, procedural due process Plaintiff was denied. She made a complaint, which was investigated without unreasonable delay, and which was substantiated. (*See* FAC ¶¶ 56-60, 69.) Plaintiff thus does not have a cognizable procedural due process claim.

---

[2] The DOE Defendants re-emphasize that Plaintiff's Section 1983 claim is under this Clause and <u>not</u> under the Equal Protection Clause. (FAC ¶ 119.)

Substantive due process, by contrast, "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Kia P. v. Mcintyre*, 235 F.3d 749, 758 (2d Cir. 2000). It prohibits the government from taking action "that is arbitrary, conscience-shocking, or oppressive." *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994). However, "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Deshaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989); *see also Doe v. Torrington Bd. of Educ.*, No. 3:15-cv-00452 (MPS), 2016 U.S. Dist. LEXIS 159091, at *5-6 (D. Conn. Nov. 17, 2016); *Faccio v. Eggleston*, 1:10-CV-783 (LEAD); 1:10-CV-699 (MEMBER), 2011 U.S. Dist. LEXIS 93649, at *36 (N.D.N.Y. Aug. 22, 2011) (collecting cases and concluding that there was no duty under the Due Process Clause for school district to protect student from student-on-student harassment).

Plaintiff's Section 1983 claim appears to contend in part that DOE's policies with respect to the investigation of Title IX claims, including the manner in which DOE staff handled intimate images of Plaintiff, fail to appropriately protect female students, in a substantive sense, under the Due Process Clause. To the extent that this amounts to a claim that DOE should create policies protecting students from each other, this type of failure-to-protect claim is not a cognizable under the Due Process Clause of the U.S. Constitution. *See Faccio*, 2011 U.S. Dist. LEXIS 93649, at *36.

As for Plaintiff's assertion that DOE has failed to develop policies that sufficiently protect female students or to train its staff to ensure their protection, Plaintiff has not adequately pleaded that there is a widespread practice of unconstitutional behavior relating to the investigation of Title IX complaints and the handling of intimate images of students such that "(1) that a

policymaker knows to a moral certainty that [their] employees will confront a given situation; (2) that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation; and (3) that the wrong choice by the employee will frequently cause the deprivation of a citizen's constitutional rights" such that the Court can reasonably infer "deliberate indifference." *Clarke v. Antonini*, No. 21 Civ. 1877 (NSR), 2022 U.S. Dist. LEXIS 171707, at *33 (S.D.N.Y. Sept. 22, 2022) (internal quotations and alterations omitted) (citing *Hawthorne ex rel. Hawthorne v. County of Putnam*, 492 F. Supp. 3d 281, 292 (S.D.N.Y. 2020)). Instead, these of Plaintiff's allegations primarily bear on the circumstances of *her* complaint about Tripodi and do not establish the type of *widespread* conduct such that the Court can reasonably infer the existence of a policy, practice, or custom on the part of the DOE Defendants. *Molina v. New York*, 21-CV-3144 (RPK)(JMW), 2023 U.S. Dist. LEXIS 8961, at *25 (E.D.N.Y. Jan. 17, 2023) ("A single instance of unconstitutional conduct is insufficient to establish a custom or policy.") (citing *Triano v. Town of Harrison*, 895 F. Supp. 2d 526, 532 (S.D.N.Y. 2021)).

Similarly, to the extent that Plaintiff asserts that DOE failed to follow its own policies, (*see, e.g.*, FAC ¶ 62) the Court is well aware that an argument asserting that "existing . . . policies were not enforced" is "the antithesis of a Monell claim" and cannot withstand a motion to dismiss. *Overhoff v. Ginsburg Dev., LLC*, 143 F. Supp. 2d 379, 389 (S.D.N.Y. 2001).

Instead, in briefing the DOE Defendants' prior motion to dismiss, Plaintiff has clarified that the focus of her Section 1983 claims is really instead the DOE Defendants' application of the purported "Victim Transfer Policy," (Mem. & Order, at pp. 9-10, July 26, 2024 (discussing Plaintiff's arguments as "specifically challeng[ing] a purported 'victim transfer policy'")), but this claim must fail because she does not establish *Monell* liability. Post-

amendment, Plaintiff has tried to remedy this deficiency[3] by reference to four other instances in which the Victim Transfer Policy was allegedly applied. This additions to her pleadings does not make Plaintiff's Section 1983 claims in the FAC any more viable than those dismissed from her first Complaint. Her Section1983 claims must again be dismissed.

Indeed, the Second Circuit has concluded in a case against the City of New York involving the Police Department that a plaintiff's identification of "at most" four instances of alleged police misconduct, allegedly consistent with a City custom or policy, fell "far short of establishing a practice that is 'so persistent or widespread' as to justify the imposition of municipal liability." *Giaccio v. City of New York*, 308 F. App'x 470, 472 (2d Cir. 2009) (internal quotations omitted) (quoting *Green v. City of New York*, 465 F.3d 65, 60 (2d Cir. 2006)). Similarly in this Court, a plaintiff, who had alleged that the Police Department had a custom of "conducting unlawful searches, seizures, and arrests in order to meet unwritten arrest quotas," had failed to plead the existence of such a custom even though the plaintiff had alleged "three specific instances of unlawful NYPD searches" and that the New York City Civilian Complaint Review Board ("CCRB") had substantiated nearly 180 instances of unlawful searches by Police Department officers, as well as citing to media reports detailing statistics of discipline (or purported lack thereof) of the involved officers. *Joseph v. Doe*, 16-CV-2004 (PKC)(LB), 2017 U.S. Dist. LEXIS 155426, at *2-3, 12-13 (E.D.N.Y. Sept. 22, 2017). . The Court noted that, without any metric about

---

[3] As noted above, to the extent that Plaintiff's Section 1983 claims are grounded on a different theory of liability, they fail as a matter of law. To the extent that Plaintiff also intended to buttress those alternative theories with her new allegations, notwithstanding her prior indication that the focus of her Section 1983 is the purported Victim Transfer Policy, these new allegations fail to make her Amended Complaint any more viable. She has still failed to establish that any alleged shortcomings in the schools referenced in Paragraphs 9 through 11 were factually similar to those faced by her at Brooklyn Tech or that these four isolated instances across eight years were so universal, well-known, and/or pervasive as to permit an inference that they amounted to districtwide policies, practices, or customs.

how the three specific instances alleged by the Plaintiffs (and the CCRB information) compared to the total number of entries and searches by the Police Department, the Court could not reasonably infer a custom of the NYPD. *Id.* at *13. The Court separately made reference to the fact that allegations about investigations or other similar accusations of misconduct against the City did not establish *Monell* liability. *See id.* at *14 (citing *Maram v. City of New York*, No. 15 Civ. 2017, 2016 WL 916424, at *22 (S.D.N.Y. Mar. 7, 2016)). Lastly, this very Court, in its order on the DOE Defendants' prior motion to dismiss, specifically noted that Plaintiff's allegations about other lawsuits (which had been amplified in Plaintiff's opposition, *see* Pl.'s Mem. of Law Opp. Mot. to Dismiss, at p. 11, ECF No. 33) were insufficient because "'[t]he existence of other lawsuits against the City alleging similar violations of constitutional rights also does not establish a policy or custom as necessary under *Monell*.'" (Mem. & Order, July 26, 2024, at p. 11 (quoting *Harris v. City of Newburgh*, No. 16-CV-2731 (KMK), 2017 WL 4334141, at *5 (S.D.N.Y. Sept. 7, 2017)).)

Plaintiff's new allegations concerning four instances in which she contends the so-called Victim Transfer Policy was applied do not adequately plead the existence of a policy, practice, or custom of the DOE Defendants.

To start, the existence of just four purported instances of wrongdoing, in the eight or so years between April 2, 2015, and November 13, 2023, cannot reasonably be inferred to establish the existence of a districtwide policy, practice, or custom relating to student-on-student allegations of sexual harassment that harmed Plaintiff in 2021-22. *See Giacco*, 308 F. App'x at 472. As in *Joseph*, Plaintiff's allegations here also fail to offer context of the frequency of student-on-student complaints of sexual harassment such that the Court could appropriately conclude that the four scenarios highlighted by Plaintiff in the FAC are demonstrative of such a policy. Given

10

that the DOE Defendants' school district regularly serves hundreds of thousands of students[4] on an annual basis, four isolated incidents across an eight-year period cannot reasonably support any inferences of a districtwide policy, practice, or custom that caused the harms allegedly endured by Plaintiff. Plaintiff's Section 1983 claims should thus be dismissed. *See Joseph*, 2017 U.S. Dist. LEXIS 155426, at *13.

Separately, the four would-be comparator incidents highlighted by Plaintiff are inapposite. Plaintiff alleges that the Victim Transfer Policy as a "*de facto* policy of offering victims of sexual and gender-based violence the choice between attending school with their assailants or transferring to a different school." (FAC ¶ 122.) This purported policy was not applied to many of the four students referenced in Plaintiff's recently amended allegations.[5] *First*, as to M.J.B., Plaintiff does not allege that she was forced to attend school with her assailant or to transfer; she was instead allegedly "instructed . . . to stop attending school." (FAC ¶ 8.) By Plaintiff's own allegations, therefore, the purported Victim Transfer Policy was not applied to M.J.B. *Second*, as to K.M., she was not offered a choice between remaining at her school with her assailant or transferring; she was allegedly instead suspended in light of a purported determination that the related sexual conduct had been consensual and was allegedly then transferred involuntarily without "being informed or consenting thereto." (FAC ¶ 10.) Plaintiff refers to this as "an actual execution of the Victim Transfer Policy," (*id.*), but as noted, Plaintiff separately defines the purported Victim Transfer Policy as giving a victim the choice to either remain at a school or to transfer. By contrast, the involuntary transfer of a victim, as allegedly happened with K.M., is a

---

[4] DOE data suggests that it served at least 912,064[4] students in the 2023-24 school year. https://www.schools.nyc.gov/about-us/reports/doe-data-at-a-glance (data under "Students" tab).

[5] The DOE Defendants accepts the facts of these incidents as Plaintiff has pleaded them only for the purpose of the instant Motion; the DOE Defendants do not admit these allegations' accuracy.

11

different scenario and not an application of the Victim Transfer Policy at all, as defined. These purported comparators thus do not support the existence of a DOE policy, practice, or custom such that Plaintiff has satisfactorily pleaded *Monell* liability.

As for A.E. and J.M., their cases are factually dissimilar from Plaintiff's case such that any inference about the existence of a Victim Transfer Policy would be suspect. Indeed, in A.E.'s case, the relevant school allegedly permitted A.E.'s harasser to return to the same classes with A.E., (FAC ¶ 9), before allegedly applying the Victim Transfer Policy. Whether the school could have removed A.E.'s harasser from A.E.'s classes is not addressed in Plaintiff's allegations, a key fact distinguishing A.E. from this case, where Plaintiff expressly alleges that the DOE Defendants made sure that she would not be in classes with Tripodi, (FAC ¶ 53). With J.M., Plaintiff alleges that her alleged harasser was actively continuing to stalk J.M. at school when the school allegedly applied the Victim Transfer Policy, (FAC ¶ 11); no similar allegations are made with respect to Tripodi in this action. Thus, without comparable facts preceding the alleged application of the Victim Transfer Policy inthe A.E. or J.M. matters, the Court cannot concluded that a uniform policy exists when a student has made a complaint, as here, about historical off-campus harassment in response to which the school removes the alleged harasser from the complainant's classes. Thus Plaintiff's Section 1983 claims must be dismissed.

Lastly, to the extent that Plaintiff may have previously contended that statements by the Brooklyn Tech dean were sufficient to establish *Monell* liability, (*e.g.*, Mem. & Order, at p. 11, July 26, 2024, ECF No. 37), the Court has already found that an inadequate basis for *Monell* liability, (*id.*). Plaintiff does not allege that the Brooklyn Tech dean is a DOE policymaker in any event. As such, any alternative argument by Plaintiff on this ground should fail as a matter of law.

In sum, Plaintiff's relied-upon comparators are too few and too different to establish the existence of any "Victim Transfer Policy"—or other policy of the DOE Defendants. Notwithstanding Plaintiff's attempts to remedy her Section 1983 claims through amendment, the Court should dismiss them again.

## POINT II

### THE CITY OF NEW YORK IS NOT A PROPER DEFENDANT IN THIS ACTION.

The City of New York and the New York City Department of Education are separate legal entities. *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 248 (S.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013); *Romero v. City of New York*, 839 F. Supp. 2d 588, 601 (E.D.N.Y. 2012) (dismissing the City in a Title IX case as an improper party and collecting cases). As such, the City "'cannot be liable for the acts of the NYCDOE or its employees.'" *Romero*, 839 F. Supp. 2d at 601 (internal alterations omitted) (quoting *Chapman v. City of New York*, No. 06-CV-3153(ENV)(JMA), 2011 U.S. Dist. LEXIS 34221, at *13-16 (E.D.N.Y. Mar. 25, 2011)). Plaintiff does not allege any facts concerning the City, aside from the statement that the City "operated and operates" the Department of Education "under its authority," which clearly stands at odds with the well-established notion that the City is a separate legal entity from the Department of Education that cannot be held liable for the Department of Education's acts or omissions. *See Sotomayor*, 862 F. Supp. 2d at 248; *Romero*, 839 F. Supp. 2d at 601. In her FAC, Plaintiff does not allege any specific misconduct on the part of the City, repeatedly referring instead to the

NYCDOE throughout the FAC. In light of this, the City of New York should be dismissed from this action as an improper party.[6]

## CONCLUSION

For the foregoing reasons, the DOE Defendants respectfully request that the Court issue an order pursuant to Rule 12 of the Federal Rules of Civil Procedure dismissing the first Amended Complaint, denying all claims against them therein, and granting judgment to the DOE Defendants, together with such other and further relief that the Court may deem just and proper.

Dated:     August 7, 2025
               New York, New York

**MURIEL GOODE-TRUFANT**
*Corporation Counsel of the City of New York*
Attorney for Defendants City of New York,
  Melissa Aviles-Ramos, and the New York City
  Department of Education
100 Church Street
New York, NY 10007
t: (212) 356-2649
f: (212) 356-1148
e: dthayer@law.nyc.gov

By:    */s/ David S. Thayer*
        DAVID S. THAYER
        *Assistant Corporation Counsel*

---

[6] The DOE Defendants note that Plaintiff purports to assert her Seventh and Eighth Causes of Action solely against the City of New York—though the content of these claims focuses on the Department of Education and its Chancellor.

# CERTIFICATION

Pursuant to 28 U.S.C. § 1746, I, **DAVID S. THAYER**, certify as follows:

Consistent with Local Civil Rule 7.1(c)'s requirement that, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, memoranda of law in support of and in response to a motion (except for motions for reconsideration) may not exceed 8,750 words, and reply briefs may not exceed 3,500 words, the number of words in this document, as determined by Microsoft Word's Word Count feature, is 4,232 words.

I certify under penalty of perjury that the foregoing is true and correct.

Dated:     August 7, 2025
              New York, New York

                                        */s/ David S. Thayer*
                                        DAVID S. THAYER