No. 22 CV 7773 (OEM)(RML)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JANE DOE,

*Plaintiff*,

- against -

NEW YORK DEPARTMENT OF EDUCATION, the CITY OF NEW YORK, and CHANCELLOR DAVID C. BANKS in his official capacity, and ALEX TRIPODI,

*Defendants*.

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE DOE DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

**MURIEL GOODE-TRUFANT**
*Corporation Counsel of the City of New York*
Attorney for Defendants New York City Department of Education, City of New York, and Chancellor Melissa Aviles-Ramos
100 Church Street
New York, NY 10007

Of Counsel: David S. Thayer
Tel: (212) 356-2649
Matter No. 2022-075851

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. III

PRELIMINARY STATEMENT ............................................................................................ 1

ARGUMENT ............................................................................................................................ 2

    POINT I ............................................................................................................................ 2

        PLAINTIFF'S CLAIMS UNDER § 1983 FAIL AS
        A MATTER OF LAW. ......................................................................................... 2

    POINT II ........................................................................................................................... 8

        THE CITY OF NEW YORK IS NOT A PROPER
        DEFENDANT IN THIS ACTION. ..................................................................... 8

    POINT III .......................................................................................................................... 9

        PLAINTIFF'S TITLE IX CLAIMS SHOULD BE
        DISMISSED. ........................................................................................................ 9

CONCLUSION ...................................................................................................................... 10

CERTIFICATION ................................................................................................................. 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Collins v. City of New York*,
   923 F. Supp. 2d 462 (E.D.N.Y. 2013) ............................................................................7

*Hu v. City of New York*,
   927 F.3d 81 (2d Cir. 2019)..............................................................................................4

**Statutes**

42 U.S.C. § 1983............................................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 8..................................................................................................................4

Fed. R. Civ. P. 12............................................................................................................2, 9

Fed. R. Civ. P. 25..................................................................................................................1

U.S. Const. amend. XIV ............................................................................................2, 3, 4

# **PRELIMINARY STATEMENT**

Pseudonymous Plaintiff Jane Doe attended Brooklyn Technical High School with Defendant Alex Tripodi, a student with whom Plaintiff had a dating relationship. During the course of their relationship, Tripodi allegedly sexually harassed Plaintiff through the period of remote learning during the COVID-19 pandemic with telephone calls, text messages, and physical confrontations. Defendants City of New York, Chancellor Melissa Aviles-Ramos,[1] and the New York City Department of Education (collectively, the "DOE Defendants") were unaware of this harassment during its commission by Tripodi. Instead, after Plaintiff and Tripodi had ended their relationship and they were returning to in-person learning for their senior year in the 2021-2022 school year, Plaintiff informed New York City Department of Education ("DOE") staff of Tripodi's harassing behavior. Plaintiff asserts that DOE's response to her complaint was inadequate and that the response created a hostile learning environment at school, both in violation of Title IX's prohibitions on discrimination in educational settings on the basis of sex and that DOE's policies and practices attendant to Title IX investigations were constitutionally inadequate insofar as they allegedly require victims of harassment to transfer schools, rather than harassers, and because DOE also has failed to implement appropriate policies or to follow extant policies in connection with Title IX complaints and investigations.

The DOE Defendants moved to dismiss the operative first Amended Complaint ("FAC"). Plaintiff opposed this motion, contending that she had sufficiently pleaded *Monell* liability for her Section 1983 claim. She does not, however, contest the appropriateness of the DOE

---

[1] Automatically substituted pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, in light of the fact that, as the caption makes clear, the Chancellor was originally named in his official capacity.

1

Defendants' second primary argument in their motion to dismiss, *i.e.*, that the City of New York is not a proper party to this action.

Despite her protestations to the contrary, Plaintiff has not sufficiently pleaded *Monell* liability. To start, she does not engage with the DOE Defendants' argument that many of her proposed comparators—from which she purports to extrapolate a districtwide policy, practice, or custom—do not even contain the application of the alleged policy with which Plaintiff takes umbrage in this case. Moreover, Plaintiff's quibbles with the facts in cases cited by the DOE Defendants do not undermine the principle for which they stand: just a few incidents of a purported policy allegedly applied in disparate settings at disparate times and in disparate ways does not permit the inference of a pervasive, districtwide policy, practice, or custom. Plaintiff fails to satisfactorily plead to the contrary, and her Section 1983 claim must therefore fail.

Accordingly, DOE respectfully requests that this Court issue an order pursuant to Rule 12 of the Federal Rules of Civil Procedure dismissing the FAC and all claims against the DOE Defendants in this action.

## ARGUMENT

### POINT I

**PLAINTIFF'S CLAIMS UNDER § 1983 FAIL AS A MATTER OF LAW.**

**A.     The Equal Protection Claim Newly Asserted In Plaintiff's Opposition.**

The DOE Defendants previously argued, (ECF No. 61, at pp. 6-13), that Plaintiff failed to plead her Section 1983 claim because she could not satisfactorily allege *Monell* liability. In doing so, the DOE Defendants noted that Plaintiff had pleaded her Section 1983 as one arising under the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution. (*Id.* at p. 6 n.2.) The DOE Defendants, in their prior motion to dismiss the original Complaint, also

highlighted this fact. (ECF No. 31, at pp. 11.) In both motions, the DOE Defendants analyzed the elements of a procedural and a substantive due process claim. (ECF No. 31, at pp. 11-15; ECF No. 61, at pp. 6-9.)

Now, for the first time, nearly two years after the DOE Defendants first highlighted and analyzed Plaintiff's Section 1983 claim under the Due Process Clause in the DOE Defendants' December 7, 2023 Memorandum of Law, (ECF No. 31, at pp. 11-15), and consistent with the Plaintiff's own express allegations, (Compl. ¶ 114; FAC ¶ 119), Plaintiff has revealed—in her opposition to the DOE Defendants' most recent motion—that she believes she has pleaded an Equal Protection claim. (ECF No. 62, at p. 3 n.1). This is based upon language in Paragraph 119 that contends that Plaintiff has a right "*under the Due Process clause of the Fourteenth Amendment . . . to be protected from procedures and policy of state actors that disparately impact her based on her sex.*" (ECF No. 62, at p. 3 n.1 (emphasis added).) Plaintiff inexplicably suggests this express reference was not meant to be exhaustive of the purported source of Plaintiff's right.

Plaintiff also contends that an Equal Protection claim is similarly set forth by reference to the DOE Defendants' alleged failure "to implement procedures and policies that protect access to education afforded to female students" in Paragraph 121 and in her allegation that other policies "directly harm female students" in Paragraph 123. (ECF No. 62, at p. 3 n.1.)

Plaintiff's belated attempt to make the FAC imply a claim that it does not expressly assert must fail. To start, the timing of Plaintiff's rearticulation of her Section 1983 claim is prejudicial and approaches gamesmanship. As noted above, the DOE Defendants highlighted the fact Plaintiff's Section 1983 claims were under the Due Process Clause nearly two years ago, and Plaintiffs did not indicate otherwise; indeed, the Court's Order dismissing Plaintiff's Section 1983 claim, (ECF No. 37, at pp. 10-11), does not contain language discussing the Equal Protection

3

Clause. For Plaintiff to now contend that she has been asserting such a claim all along when she did not actually include a "statement of [that] claim," Fed. R. Civ. P. 8(a)(2), strains credulity. Plaintiff also fails to identify any authority, especially outside of the *pro se* context, permitting a court to infer a claim that was not pleaded. Plaintiff's attempt to reformulate her claims should thus be disregarded.

Even if Plaintiff had actually asserted a claim under the Equal Protection Clause, however, it would fail. Firstly, despite Plaintiff's implication to the contrary, the identity of persons that the Plaintiff contends the DOE Defendants treats differently pursuant to the Victim Transfer Policy is not clear. The language cited above suggests that Plaintiff may believe it is "female students" who have been subjected to sexual harassment whom the Victim Transfer Policy is improperly applied "based on . . . sex." (FAC ¶¶ 119, 121, 123; *see also* ECF No. 62, at p. 4 (contending that the FAC establishes a policy that, "when a female student is assaulted by a male student (or students) and feels unsafe, she is forced to choose between either continuing to face her abuser or transferring to a different school").) However, the FAC does not contain any non-conclusory allegations about how similarly situated comparator male victims of sexual harassment are treated differently than female victims, condemning any Equal Protection claim premised on sex. *See Hu v. City of New York*, 927 F.3d 81, 101 (2d Cir. 2019) (requiring the pleading of a comparator in both *Olech*- and *LeClair*-style claims).

Additionally, the Victim Transfer Policy is separately defined in the FAC as one that "compel[s] the victim to transfer to another school." (FAC ¶ 6; *see also* FAC ¶ 122.) This suggests that the different treatment with which Plaintiff truly takes umbrage is that of alleged *victims* as opposed to accused harassers, which would be subject to rational-basis scrutiny under the Equal Protection Clause. Again, however, Plaintiff has condemningly failed to plead the

existence of a comparator. Any Equal Protection claim—to the extent one was actually asserted—should therefore be dismissed.

**B.     The Theories of Liability For Which Plaintiff Did Not Respond to the DOE Defendants' Arguments.**

Separately, Plaintiff does not respond to the DOE Defendants' arguments, (ECF No. 61, at p. 6), about the merits of any procedural due process claim she may be asserting. Plaintiff likewise does not respond to the DOE Defendants' arguments, (ECF No. 61, at pp. 7-8), about the merits of her substantive due process claims predicated on any purported failure of the DOE Defendants to protect Plaintiff from harassment or to train staff to ensure female students' protection. Plaintiff also does not respond to the arguments, (ECF No. 61, at p. 8), that she cannot plead *Monell* liability for the DOE Defendants' purported failure to follow existing policies. The Court should therefore dismiss these claims.

**C.     *Monell*.**

Instead, as expected, Plaintiff's opposition primarily focuses on the DOE Defendants' application of the purported "Victim Transfer Policy." Plaintiff, however, fails to plead *Monell* liability on this front because she lacks sufficient allegations to plead the existence of the Victim Transfer Policy to begin with. Indeed, as is apparent from the foregoing discussion, the precise contours of how Plaintiff defines the Victim Transfer Policy are unclear; Plaintiff has oscillated between describing it as one requiring victims rather than harassers to transfer, (FAC ¶¶ 6, 122), and describing it as one that requires female victims rather than their male harassers to transfer, (ECF No. 62, at p. 4).

Under either definition, Plaintiff's argument—that Dean Clarke's statement that, "as a matter of policy," (ECF No. 62, at p. 6), he could only offer a transfer to her—is misleading. The language quoted by Plaintiff appears to come from Paragraph 59 of the FAC, which concerns

the provision of Tripodi's written apology letter to Plaintiff, *not* the transfer of Plaintiff to a different school. In any event, Plaintiff has not alleged facts permitting an inference that Dean Clarke was a policymaker such that his statements are relevant for *Monell* purposes, as this Court has previously held. (Mem. & Order, at p. 11, July 26, 2024, ECF No. 37.)

More condemningly, Plaintiff fails to allege other instances in which the Victim Transfer Policy has been purportedly applied such that the Court could reasonably infer that the Policy is in fact a policy, practice, or custom of the DOE Defendants. As articulated in the DOE Defendants' initial moving papers, (ECF No. 61, at pp. 9-12), the four comparator instances described in the FAC are inadequate to plead *Monell* liability. Plaintiff's arguments to the contrary are unavailing.

In fact, in opposition, Plaintiff does not provide any counter-argument to the fact that the M.J.B. and K.M. students whom she identifies as comparators were *not*, in fact, given the choice between "between attending school with their assailants or transferring to a different school," (FAC ¶ 122), the Victim Transfer Policy of which Plaintiff complains. Instead, M.J.B. was outright "instructed . . . to stop attending school," (FAC ¶ 8), and K.M. was involuntarily transferred to another school without "being informed or consenting thereto," (FAC ¶ 10). Neither scenario permits an inference of the existence of a Victim Transfer Policy as defined by Plaintiff because, simply, neither scenario involved its use. At the outset, therefore, two of Plaintiff's four proposed comparators for *Monell* purposes have no relevance to this action; they cannot support a reasonable inference of the existence of Victim Transfer Policy, practice, or custom of the DOE Defendants that allegedly harmed the Plaintiff here.

Plaintiff's allegations about the A.E. and J.M. students are likewise unhelpful to her. *First,* as to J.M., the purported application of the Victim Transfer Policy—a choice between

6

having "to enroll in home school or transfer to a different school"—occurred after November 13, 2023. (FAC ¶ 11.) This allegation has no probative value as to whether a Victim Transfer Policy in existence *in the 2021-22 school year* caused a harm to Plaintiff. In other words, J.M.'s experience post-dates Plaintiff's harms and thus provides no basis on which to infer the existence of a policy, practice, or custom that caused Plaintiff's harms two school years beforehand. *See Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013) (discounting purported instances of inadequate training that post-dated a plaintiff's alleged wrongful conviction). Moreover, the Victim Transfer Policy again appears to have *not* been applied: J.M. was not forced to remain at her school with her assailant or transfer but was instead given the option to *home* school J.M. or transfer her to a different public school. (FAC ¶ 11.)

*Second*, as to A.E., the circumstances surrounding the purported application of the Victim Transfer Policy are again different. The alleged incident involving A.E. occurred in the 2015-16 school year, as contrasted with the incident involving Plaintiff having occured in the 2021-22 school year; the A.E. incident occurred on the grounds of a middle school to a middle school student, as opposed to off-campus during the Plaintiff's high school years; and the harassing student was permitted to return to A.E.'s class, unlike Tripodi's separation from Plaintiff's classes, (FAC ¶ 52). (FAC ¶ 9.) A.E., moreover, was not given the choice of whether to remain in school or transfer to another one. Instead, A.E.'s parents were told to "home school A.E. or to transfer her to an Intermediate School." (FAC ¶ 9.) Again, this is not an application of the Victim Transfer Policy as defined by Plaintiff.

In sum, the cases that Plaintiff has offered as comparators to plead the existence of a districtwide policy, practice, or custom are inapposite. They instead involve circumstances in which the purported Victim Transfer Policy was *not* applied, occurred after the Plaintiff's injury

7

occurred, and/or involved circumstances so disparate from those implicated in this action as to provide an inadequate basis to permit a reasonable inference of a policy, practice, or custom of the DOE Defendants that allegedly harmed the Plaintiff in this action. As such, the Plaintiff has failed to plead *Monell* liability, and her Section 1983 claims should be dismissed.

Finally, even if the Court were to conclude that these comparators were sufficiently similar to the harm alleged by Plaintiff here, they are still too few to permit a reasonable inference of the existence of a districtwide policy, practice, or custom. Plaintiff takes issue with the particular facts of the cases cited in the DOE Defendants' moving cases but does not meaningfully rebut the notion set forth in them: just four comparator cases (which, as argued above, are not even comparable) across such disparate times and circumstances are sufficient, without more, to plead the existence of a policy, practice, or custom of a school district serving hundreds of thousands of students.

Plaintiff's Section 1983 claims should thus be dismissed.

## POINT II

### THE CITY OF NEW YORK IS NOT A PROPER DEFENDANT IN THIS ACTION.

In its initial moving papers, the DOE Defendants argued that the City of New York should be dismissed as an improper party. (ECF No. 61, at pp. 13-14.) Plaintiff indicates that she "[d]oes [n]ot [c]ontest" this argument in light of the fact that she is "unaware of any law to contradict" it. (ECF No. 62, at p. 13.) In light of this, the City of New York should be dismissed from this action as an improper party.[2]

---

[2] The DOE Defendants reiterate that Plaintiff purports to assert her Seventh and Eighth Causes of Action solely against the City of New York.

8

# POINT III

## PLAINTIFF'S TITLE IX CLAIMS SHOULD BE DISMISSED.

As set forth in their initial moving papers, (ECF No. 61, at p. 2), the DOE Defendants maintain that the FAC should be dismissed because Title IX does not govern the appropriateness of DOE's response to Plaintiff's complaint because the DOE Defendants did not have substantial control over the conduct giving rise to the complaint and because her Section 1983 claims subsumes some or all of Plaintiff's Title IX claim. (*See generally* DOE Defs.' Mem. of Law Supp. Mot. to Dismiss, at pp. 5-11, 13-14, ECF No. 31; Reply Mem. of Law, at pp. 2-8, ECF No. 34.) However, the DOE Defendants recognize that the Court has ruled on these arguments in its July 24, 2024 Memorandum and Order, (ECF No. 37), on Plaintiff's prior Complaint and simply incorporate and reiterate these arguments in order to reserve the right to raise them on appeal if necessary.

# CONCLUSION

For the foregoing reasons and for the reasons set forth in their initial moving papers, the DOE Defendants respectfully request that the Court issue an order pursuant to Rule 12 of the Federal Rules of Civil Procedure dismissing the first Amended Complaint, denying all claims against them therein, and granting judgment to the DOE Defendants, together with such other and further relief that the Court may deem just and proper.

Dated: September 22, 2025
New York, New York

**MURIEL GOODE-TRUFANT**
*Corporation Counsel of the City of New York*
Attorney for Defendants City of New York,
 Melissa Aviles-Ramos, and the New York City
 Department of Education
100 Church Street
New York, NY 10007
t: (212) 356-2649
f: (212) 356-1148
e: dthayer@law.nyc.gov

By: */s/ David S. Thayer*
    DAVID S. THAYER
    *Assistant Corporation Counsel*

# CERTIFICATION

Pursuant to 28 U.S.C. § 1746, I, **DAVID S. THAYER**, certify as follows:

Consistent with Local Civil Rule 7.1(c)'s requirement that, excluding the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, memoranda of law in support of and in response to a motion (except for motions for reconsideration) may not exceed 8,750 words, and reply briefs may not exceed 3,500 words, the number of words in this document, as determined by Microsoft Word's Word Count feature, is 2,743 words.

I certify under penalty of perjury that the foregoing is true and correct.

Dated: September 22, 2025
New York, New York

                                               */s/ David S. Thayer*
                                               DAVID S. THAYER